In the Interest of: T.W.C. and D.K.C.; F.W.M., Appellant,

v.

**CHILDREN'S DIVISION OF THE DIVISION OF SOCIAL SERVICES, Respondent,**

**Juvenile Officer, Respondent.**

**Nos. WD 71740, WD 71741.**

Missouri Court of Appeals, Western District.

Aug. 3, 2010.

Kirk S. Zwink, for Appellant.

Gary L. Gardner, for Respondent Missouri Children's Division

Jill Creed, for Respondent Juvenile Officer.

Before Division Three: VICTOR C. HOWARD, Presiding Judge, THOMAS H. NEWTON, Judge and GARY D. WITT, Judge.

VICTOR C. HOWARD, Judge.

F.M. appeals from the judgments of the trial court terminating his parental rights to his children, D.K.C. and T.W.C., pursuant to sections 211.447.5(3)—failure to rectify—and 211.447.5(6)—unfit parent.[1] He claims that the judgments were not supported by clear, cogent, and convincing evidence. The judgments are affirmed.

## Facts

The appellant, F.M. (Father), is the natural father of D.K.C. and T.W.C., both born on April 30, 2004. A.L. (Mother), the natural mother of the children, consented to the termination of her parental rights.

At the time of the hearing on the petitions for termination of parental rights, Father was thirty-six years old and had been continuously incarcerated since he was eighteen years old, except for a thirteen month period during which time the children were conceived and born. Father was originally incarcerated on convictions of three counts of class A felony first-degree robbery, three counts of felony armed criminal action, and class C felony second-degree burglary. He was released from prison in August 2003 and met Mother a month later. In September 2004, when the children were four months old, Father was again incarcerated after being convicted of class C felony endangering the welfare of a child.

---

1. All statutory references are to RSMo Cum. Supp.2009 unless otherwise indicated.

In November 2005, when the children were eighteen months old, they were taken into protective custody and placed in foster care. The children have remained in the same foster home in Higbee, Missouri, since November 2005.

Father has had no physical contact with the children since they were four months old. He maintained regular contact with the children by sending drawings, letters, and gifts. When the children were four years old, the children's division arranged telephone contact between Father and the children. The juvenile office sent Father notice of all court proceedings and copies of all judgments involving the children, and an attorney was appointed to him and represented him at all of the court hearings except one. Father also regularly participated in family support team meetings by telephone where written service agreements were provided for Mother with a goal toward reunification of the children with her. Reunification with Father was never a goal in the case because of his incarceration and lack of bond between him and the children.

At the hearing on the petitions for termination of parental rights, the trial court heard the testimony of the juvenile officer, a licensed clinical social worker who met with the children to determine what bonds they had with Father and with their foster parents, the previous and current case managers, the court-appointed special advocate, and Father. The trial court entered its judgment terminating Father's parental rights based on two grounds—failure to rectify, section 211.447.5(3), and unfit parent, section 211.447.5(6).[2] This appeal by Father followed.

## Standard of Review

In terminating parental rights, the trial court must find by clear, cogent, and convincing evidence that one or more grounds for termination exists under subsections 2, 4, or 5 of section 211.447 and that termination is in the best interests of the child. § 211.447.7. *In the Interest of P.L.O.*, 131 S.W.3d 782, 788 (Mo. banc 2004); *In the Interest of I.Q.S.*, 200 S.W.3d 599, 603 (Mo.App. W.D.2006). The appellate court reviews whether statutory grounds for termination have been proven by clear, cogent, and convincing evidence under the standard set forth in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). *P.L.O.*, 131 S.W.3d at 788–89. "Thus, the trial court's judgment will be affirmed unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law." *I.Q.S.*, 200 S.W.3d at 603. The appellate court reviews the question of whether termination is in the best interests of the child under the abuse of discretion standard. *P.L.O.*, 131 S.W.3d at 789; *I.Q.S.*, 200 S.W.3d at 603. "In all of these determinations, the appellate court is deferential to the trial court's findings of fact and considers all of the evidence and reasonable inferences from the evidence in the light most favorable to the judgment." *I.Q.S.*, 200 S.W.3d at 603.

## Unfit Parent

Although the trial court terminated Father's parental rights under two statutory grounds for termination, satisfaction of only one ground is sufficient to sustain the

---

**2.** The trial court also found that termination of Father's parental rights was appropriate under section 211.447.2(1), in that the children had been in foster care for at least fifteen of the most recent twenty-two months. Section 211.447.2(1) is not, however, a separate ground for termination of parental rights "but rather solely ... a trigger for filing a termination petition." *In the Interest of M.D.R.*, 124 S.W.3d 469, 476 (Mo. banc 2004).

judgment. *Id.* at 604. Thus, although Father raises several points on appeal regarding the evidence to support each ground, this opinion only addresses the trial court's finding that termination of Father's parental rights was appropriate under section 211.447.5(6)—unfit parent. Section 211.447.5(6) provides, in pertinent part, that termination is appropriate when:

> The parent is unfit to be a party to the parent and child relationship because of a consistent pattern of committing a specific abuse ... or of specific conditions directly relating to the parent and child relationship either of which are determined by the court to be of a duration or nature that renders the parent unable, for the reasonably foreseeable future, to care appropriately for the ongoing physical, mental or emotional needs of the child.

Thirty-six year old Father has been incarcerated all but thirteen months since he was eighteen years old. He was originally incarcerated on seven felony convictions. During the thirteen month period that he was not incarcerated, the children were conceived and born. When the children were four months old, Father returned to prison upon conviction for endangering the welfare of a child for providing alcohol to minors under the age of fourteen who were babysitting his children. While incarceration alone shall not be grounds for termination of parental rights, section 211.447.7(6), it does not discharge a parent's obligation to provide the child with a continuing relationship through communication and visitation. *I.Q.S.*, 200 S.W.3d at 604. Father has not had any physical contact with the children since they were four months old. Father acknowledged at the hearing that he never requested visitation with the children because he did not want them to see him in prison. At the time of the hearing, the children were five years old

and closely bonded with their foster parents, with whom they have lived since being taken into protective custody when they were eighteen months old. Although Father attempted to create a relationship with the children through drawings, letters, gifts, and telephone conversations, his efforts did nothing to foster a bond between him and the children. According to the case manager and the licensed clinical social worker, the children are not even sure who Father is. When speaking to him on the telephone, they often thought they were speaking to their foster father. Father acknowledged that by his own actions, he has been unavailable to be a parent to the children since they were four months old.

Furthermore, the social worker testified that while visitation and counseling could be offered to Father and the children upon Father's release from incarceration with a goal to developing a relationship, such process could take "years." She explained that the first four years of life are critical for attachment and that separating the children from their foster parents, whom they consider their parents, and attempting to create a bond with Father would be damaging to the children and could negatively affect them for the rest of their lives.

Father's absence from the children and the lack of a bond between him and the children render Father unable, for the reasonable future, to care appropriately for the children's ongoing physical, mental, or emotional needs. *See, e.g., In the Interest of C.W.,* 64 S.W.3d 321, 325 (Mo.App. W.D.2001)(mother's unfitness was of sufficient duration or nature to render her unable to care for children's ongoing needs where children had no emotional ties to mother, one child feared living with moth-

er, mother had failed to protect children from father's abuse, mother's repeated incarcerations had deleterious effect on emotional bond with children, and prospects for reunification were poor and would take several years). The trial court's determination that Father was unfit to be a party to the parent and child relationship was supported by clear, cogent, and convincing evidence.

### Best Interests of the Child

█ Likewise, the trial court did not abuse its discretion in finding that termination of Father's parental rights is in the best interests of the children. As noted above, Father has been incarcerated and has not had any physical contact with the children since they were four months old. And although Father maintained regular contact with the children by sending drawings, letters, and gifts and by telephone when they got older, no bond exists between Father and the children, and the children are not even sure who he is. The children have been in the same foster home since they were eighteen months old. They are closely bonded with their foster parents and consider them to be their mother and father. Finally, even though Father was due to be released on parole within two months of the hearing, additional services such as counseling would not enable the children to be returned to him within an ascertainable period of time.

The judgments of the trial court are affirmed.

All concur.