In the Interest of: C.S. and C.S., Jr.

**Juvenile Officer, Respondent,**

v.

**C.S., Sr. (Natural Father), Appellant.**

**No. WD 73782.**

Missouri Court of Appeals, Western District.

Nov. 1, 2011.

---

Anthony L. Gosserand, Kansas City, MO, for Appellant.

Katie A. Rooney, Kansas City, MO, for Respondent.

Katherine J. Rodgers, Kansas City, MO, Guardian ad litem.

Before Division Three: KAREN KING MITCHELL, Presiding Judge, and JAMES M. SMART, JR., and GARY D. WITT, Judges.

KAREN KING MITCHELL, Presiding Judge.

C.S., Sr. ("Father") appeals the judgment of the Circuit Court of Jackson County, Missouri ("trial court"), terminating his parental rights to his two children C.K.S. and C.B.S., Jr. ("the twins"). On appeal, Father alleges that the trial court erred in finding statutory grounds upon which to terminate his parental rights as to the twins because the court's findings that Father neglected the children as defined in RSMo 2000[1] section 211.447.5(2) and that Father was unfit to parent the twins under section 211.447.5(6) were both impermissibly based solely upon Father's incarceration. We affirm the judgment of the trial court.

## Factual and Procedural Background[2]

The twins were born on July 21, 2008. At approximately the time the twins' mother ("Mother") would have discovered that she was pregnant, Father was arrested for possessing a stolen firearm. Father had been incarcerated by the time the twins were born.[3] On February

Appeal from the Circuit Court of Jackson County, Missouri, Marco A. Roldan, Judge.

1. All statutory references are to RSMo 2000, as updated by the 2010 cumulative supplement, unless otherwise noted.

2. We view the facts and all reasonable inferences therefrom in the light most favorable to the trial court's judgment terminating paren-

tal rights. *In the Interest of K.M.,* 249 S.W.3d 265, 270 (Mo.App. W.D.2008).

3. On cross-examination of the Division of Family Services caseworker, Father's counsel elicited testimony that Father was not convicted until August 26, 2008, approximately

27, 2010, the twins were placed in the custody of the Children's Division because Mother had committed suicide and Father was in federal prison in Louisiana. On March 24, 2010, the twins were placed with a Mr. and Mrs. Knight, one of whom had been a relative of Mother's.

On March 2, 2010, the trial court issued a no-contact order barring Father from contacting the twins. The no-contact order was renewed on July 6, 2010. On June 30, 2010, the Juvenile Officer of Jackson County, Missouri, filed petitions for termination of Father's parental rights as to both of the twins. Father opposed the termination of his parental rights and indicated to Tamika Strickland, who was the Division of Family Services worker appointed to the twins' case, that he would do whatever was asked of him to preserve his parental rights to his children. Father has maintained contact with Strickland via e-mail, asking how the twins were doing, and Father sent several cards and letters to the children while they were in the care of the Knights.[4] Additionally, Father arranged, from prison, to have the twins receive Christmas gifts through the Salvation Army's Angel Tree program in 2010. Father attempted to have his sister take the twins, and both the sister and Father's mother visited the twins following Mother's suicide. Father's sister, however, ultimately decided that she could not care for the twins, and they remained with the Knights.

Due to Father's imprisonment out of state, he has not been able to visit the twins or to receive any other services through the Division of Family Services that would help him maintain a closer relationship with the twins or otherwise develop parenting skills. Father's imprisonment and the twins' young age have resulted in their not knowing Father or having bonded with him, despite his attempts to maintain contact with them. The twins refer to the Knights as "Mom" and "Dad," and the Knights wish to adopt the twins. Father has not been able to provide financial support for the twins other than the cards, letters, and Christmas gifts, and none of Father's relatives has provided any support for the twins. Father will not be released from prison until, at the earliest, sometime in 2016, at which time the twins will be approximately eight years old.

The trial court's judgment terminated Father's parental rights as to both of the twins, based upon statutory findings of neglect as defined in section 211.447.5(2) and Father's unfitness as a party to the parent-child relationship as defined in section 211.447.5(6). Additionally, the trial court's judgment found that termination was in the twins' best interests. Father appeals the trial court's findings as to both statutory factors.

## Standard of Review

Pursuant to section 211.447, a trial court may terminate parental rights if it finds, by clear, cogent, and convincing evidence, the presence of at least one of the statutory grounds for termination specified in the statute. *In the Interest of S.M.H.*, 160 S.W.3d 355, 362 (Mo. banc 2005). Clear, cogent, and convincing evidence is that which "instantly tilts the scales in favor of termination when weighed against the evidence in opposition and the finder of

one month after the twins were born. Father's counsel implies that Father was not incarcerated until that date. Of course, it is possible that Father was subject to pre-trial incarceration. In any event, it is clear that, at

best, Father was incarcerated shortly after the twins were born.

4. Despite the no-contact order, Father apparently was able to send cards and letters.

fact is left with the abiding conviction that the evidence is true." *Id.*

■■■ The appellate courts will affirm a trial court's termination of parental rights unless: (1) the record contains no substantial evidence to support the trial court's termination; (2) the termination is against the weight of the evidence; (3) the trial court has erroneously declared the law in terminating the parental rights; or (4) the trial court has misapplied the law in terminating parental rights. *F.W.M. v. Children's Div.*, 316 S.W.3d 538, 540 (Mo.App. W.D.2010) (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). The statute providing for termination of parental rights is strictly construed in favor of preserving the parent-child relationship. *Greene Cnty. Juvenile Office v. B.D.W.*, 342 S.W.3d 353, 359 (Mo.App. S.D.2011).

### Analysis

■■■ Father challenges the trial court's findings as to both statutory factors on which the judgment relied in terminating his parental rights: that he neglected the twins as defined in section 211.447.5(2); and that he is unfit as a party to the parent-child relationship as defined in section 211.447.5(6). Because the judgment need only be supported by one statutory ground for termination, and because we find that substantial evidence supports the trial court's finding that Father is unfit under section 211.447.5(6), we need not review the trial court's findings respecting Father's alleged neglect of the twins. *See S.M.H.*, 160 S.W.3d at 362 ("The presence of evidence to support one statutory ground for termination is sufficient to terminate a parent's rights.").

Section 211.447.5(6) allows termination of parental rights when:

[t]he parent is unfit to be a party to the parent and child relationship because of a consistent pattern of committing a specific abuse ... or of specific conditions relating to the parent and child relationship either of which are determined by the court to be of a duration or nature that renders the parent unable, for the reasonably foreseeable future, to care appropriately for the ongoing physical, mental or emotional needs of the child.

As the text of the statute indicates, a finding that a parent is unfit under section 211.447.5(6) must not be based solely upon instances of past abuse or of past conditions, but must have some likelihood of affecting the parent-child relationship going forward. *See In the Interest of K.A.W.*, 133 S.W.3d 1, 20 (Mo. banc 2004). In this case, the trial court's judgment found that Father's lengthy term of out-of-state incarceration, which is scheduled to continue until at least sometime in 2016, combined with the twins' young age and the lack of a close bond between Father and the twins, constituted a specific condition that would render Father unable, for the reasonably foreseeable future, to care appropriately for the twins' needs. Substantial evidence supports this finding by the trial court.

The gist of Father's argument on appeal is that, pursuant to section 211.447.7(6), "incarceration in and of itself shall not be grounds for termination of parental rights." While we first note that section 211.447.7(6) does not expressly apply to findings of unfitness under section 211.447.5(6),[5] the trial court's finding that Father is unfit is not based *solely* upon the

---

**5.** Section 211.447.7 only expressly applies when the court is considering "whether to terminate the parent-child relationship pursuant to ... subdivision (1), (2), (3) or (4) of

subsection 5 of" section 211.447. The court's finding that Father was unfit was pursuant to subdivision (6) of subsection 5 of the statute.

fact of Father's incarceration. Rather, to the extent that it is based on factors related to incarceration, it takes into account Father's *lengthy* incarceration, out of state, making Father unable to receive services and visitation that could serve to foster a relationship with the twins until he could be released, possibly in 2016. Moreover, the trial court's finding is based upon several other factors, including Father's inability to establish a bond with the twins prior to his incarceration due to their tender ages,[6] the fact that Mother had passed away, and that no other relative of Father's was willing or able to help care for the children and provide them needed stability. A lengthy term of incarceration may support a finding that a parent is unfit as defined in section 211.447.5(6) where the parent has not been able to establish a bond with his children, despite his best efforts to do so during his confinement. *See F.W.M.*, 316 S.W.3d at 541–42. In addition, it is not just the term of imprisonment that cuts against Father in this case. Upon his release from prison, Father would have to begin working on his parenting skills and would have to begin the process of both establishing a bond with children who have grown up without him and of making a home for them. As the trial court noted, this is a process that could take years. Under these circumstances it was not unreasonable for the trial court to conclude that Father would be "unable, for the reasonably foreseeable future, to care appropriately" for the needs of his children. § 211.447.5(6).

The clear purpose underlying section 211.447.5(6)'s focus on a parent's ability to care for his children in the "reasonably foreseeable future" is to assure that children have a stable permanent home. In this case, the twins have lived with the Knights since March 24, 2010. The Knights are the only parental figures the twins have ever known. The twins call Mr. and Mrs. Knight "Dad" and "Mom." Caseworker Strickland testified that she visited the family monthly. Strickland reported that both children had adjusted to the Knights' home and were thriving. Both of the termination of parental rights studies that were administered by the Division of Family Services and admitted into evidence at trial reported that the twins were in desperate need of a permanent home and that the Knights are willing to adopt the twins.

Although Father's interest in the twins and his efforts to establish a bond with them are admirable, they are simply insufficient to render him a fit parent in the face of his lengthy out-of-state term of incarceration in combination with the lack of an existing parent-child relationship. The twins' need for a stable home during their early years clearly must prevail over even Father's significant parental interest.

## Conclusion

Because substantial evidence on the record supports the trial court's finding that Father was unfit to be a party to the parent-child relationship under section 211.447.5(6), we affirm the judgment of the

---

**6.** Father argues that the Juvenile Officer's failure to present any evidence that he has failed to establish a bond with the twins prior to Mother's death impermissibly shifts the burden to Father. We agree with Father that the evidence presented by the Juvenile Officer at trial was extremely thin. However, even if we were to assume that Mother took the twins to visit Father in prison on a weekly basis, the contact between Father and the twins, who would have been infants and then toddlers at the time, would not have been such that, at least from the children's perspective, a strong bond with Father was established sufficient to withstand such a prolonged absence.

trial court terminating Father's parental rights to the twins.

JAMES M. SMART, JR., Judge, and GARY D. WITT, Judge, concur.