Zel M. Fischer, Judge
M.R.S. (“Father”) appeals from the circuit court’s judgment terminating his parental rights to his child, J.P.B. (“Child”). The circuit court found that Father neglected Child, failed to rectify conditions that led to Child coming into the care of the Children’s Division, was unfit to be a party to the parent-child relationship, and that termination was in the best interest of Child. The circuit court’s judgment is affirmed.
I. Factual and Procedural History
Father has been incarcerated since July 2013. He pleaded guilty to driving while intoxicated (as a chronic offender), second-degree attempted assault of a law enforcement officer, resisting arrest, and two counts of third-degree assault. He has a conditional release date of November 14, 2018, and a maximum release date of July 14, 2021. Child was born in February 2014 and came to the attention of the Children’s *88 Division shortly thereafter due to a report that Child’s mother attempted to sell Child. The Children’s Division took temporary legal custody and placed Child in a foster home. With respect to Father, the circuit court held an adjudication hearing, declared Father to be the biological father based on paternity testing, found Child could not be returned home due to Father’s incarceration, criminal history, and substance abuse issues, and, on November 12, 2014, ordered an incarcerated parent treatment plan.
The juvenile officer filed a petition to terminate the parental rights of both of Child’s natural parents on July 2, 2015. Father subsequently filed a motion to place Child with Child’s paternal grandmother and requested that he be permitted visitation in the prison.[1] He also filed a writ of habeas corpus ad testificandum, requesting that he be allowed to appear in person at the trial concerning the termination of his parental rights. The circuit court denied Father’s request to appear in person, but allowed him to participate via videoconference. The day before trial, Father filed a motion for continuance on the basis that the circuit court had yet to rule on his motion for placement with the grandmother. The next day, the circuit court overruled Father’s motion for continuance and motion for placement of Child with the grandmother. After being given a short recess to review the circuit court’s findings and conclusions on the motion for placement, Father filed an application for change of judge on the basis that the denial of the motion for placement indicated the judge had prejudged the matter of termination. The circuit court denied this application.
At trial, the Children’s Division case manager for Child testified that each month Father sent $2 for support, as well as two or three letters, but that Father had never met Child in person and that Child had no emotional ties to Father.[2] She testified that Father had told her he attended weekly meetings to address his substance abuse, but provided no written confirmation of such. She also testified that she could not think of any additional services that could be offered to change Father’s circumstances to a point of having Child returned to him within an ascertainable period of time, or any services that could create a bond between Father and Child. The case manager further testified that Child was doing well in the foster home and called the foster parents “mom” and “dad.” Father testified that he wanted Child placed with Child’s paternal grandmother. Both the case manager and Child’s guardian ad litem recommended that Father’s parental rights be terminated.
Following trial, the circuit court entered a judgment terminating both parents’ parental rights in accordance with § 211.447.6.[3] The circuit court found that *89 termination was in the best interest of Child and, with respect to Father, found three separate grounds for termination: that Father neglected Child pursuant to § 211.447.5(2); that Father failed to rectify conditions that led to Child coming into care pursuant to § 211.447.5(3); and that Father was unfit to be a party to the parent-child relationship pursuant to § 211.447.5(6)(a). On appeal, Father challenges the constitutional validity of § 211.447.5(6)(a), the circuit court’s finding on each ground for termination, the circuit court’s finding that termination was in the best interest of Child, and the circuit court’s rulings on his procedural requests. Because Father’s appeal involves the constitutional validity of a Missouri statute, this Court has exclusive appellate jurisdiction pursuant to article 5, § 3 of the Missouri Constitution.
II. Father’s Challenge to the Constitutional Validity of § 211.447.5(6)(a)
Father argues § 211.447.5(6)(a) is unconstitutionally vague as applied to his case because the circuit court’s determination that he was unfit to be a party to the parent-child relationship is “inextricably tied to his incarceration” and § 211.447.7(6) “explicitly provides that incarceration alone shall not be grounds for termination of parental rights.” Father argues that, to the extent § 211.447.5(6)(a) “can be read to equate incarceration with parental unfitness, it is unconstitutionally vague and thus, void.”
“The standard for determining whether a statute is void for vagueness is whether the terms or words used are of common usage and are understandable by persons of ordinary intelligence.” Bd. of Educ. of City of St. Louis v. State, 47 S.W.3d 366, 369 (Mo. banc 2001) (internal quotations omitted). Section 211.447.7 states;
When considering whether to terminate the parent-child relationship pursuant to subsection 2 or 4 of this section or subdivision (1), (2), (3) or (4) of subsection 5 of this section, the court shall evaluate and make findings on the following factors, when appropriate and applicable to the case ... (6) The conviction of the parent of a felony offense that the court finds is of such a nature that the child will be deprived of a stable home for a period of years; provided, however, that incarceration in and of itself shall not be grounds for termination of parental rights[.]
(emphasis added). By the statute’s plain terms, subdivision (6) of § 211.447.7 applies only to termination that is pursuant to certain subsections or subdivisions. Section 211.447.5(6)(a) is not included. Even if the circuit court’s finding pursuant to § 211.447.5(6)(a) were “inextricably tied” to Father’s incarceration, there is nothing vague about the lack of applicability of § 211.447.7(6) to termination that is pursuant to § 211.447.5(6)(a). Father’s challenge on vagueness is wholly without merit.
III. Father’s Challenges to the Circuit Court’s Findings
For each of the three grounds for termination found by the circuit court, Father argues the circuit court’s finding is not supported by substantial evidence and is against the weight of the evidence.[4] In *90 reviewing termination of parental rights cases, like all types of bench-tried cases, this Court is mindful “that circuit courts are better positioned to determine witness credibility and weigh evidence in the context of the whole record than an appellate court.” J.A.R. v. D.G.R., 426 S.W.3d 624, 626 (Mo. banc 2014). As previously explained by this Court:
This Court reviews whether clear, cogent, and convincing evidence was presented to support a statutory ground for terminating parental rights under Murphy v. Carrón, 536 S.W.2d 30 (Mo. banc 1976). Therefore, the trial court’s judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. The judgment will be reversed only if we are left with a firm belief that the order is wrong.
Conflicting evidence will be reviewed in the light most favorable to the trial court’s judgment. Appellate courts will defer to the trial court’s credibility assessments. When the evidence poses two reasonable but different inferences, this Court is obligated to defer to the trial court’s assessment of the evidence.
[[Image here]]
After this Court determines that one or more statutory ground has been proven by clear, convincing, and cogent evidence, this Court must ask whether termination of parental rights was in the best interest of the child. At the trial level, the standard of proof for this best interest inquiry is a preponderance of the evidence; on appeal, the standard of review is abuse of discretion.
Id. (quoting In re Adoption of C.M.B.R., 332 S.W.3d 793, 815-16 (Mo. banc 2011)). This Court has “laid to rest any argument that the ‘clear, cogent, and convincing’ burden of proof requires this Court to consider any contrary evidence when reviewing whether the judgment is supported by substantial evidence.” Id. at 626 n.4.
“In reviewing questions of fact, the reviewing court is to recognize that the circuit court is free to disbelieve any, all, or none of the evidence, and it is not the reviewing appellate court’s role to re-evaluate the evidence through its own perspective.” Id. at 627. “The trial court receives deference on factual issues because it is in a better position not only to judge the credibility of the witnesses and the persons directly, but also their sincerity and character and other trial intangibles which may not be completely revealed by the record.” Id. (internal quotations omitted).
A. Failure to Rectify Harmful Conditions
A parent’s failure to rectify the conditions that led to a child coming into care is a ground for termination pursuant to § 211.447.5(3) when the following three elements are present: (1) “[t]he child has been under the jurisdiction of the juvenile court for a period of one year;” (2) “the conditions which led to the assumption of jurisdiction still persist, or conditions of a potentially harmful nature continue to exist;” and (3) “there is little likelihood that those conditions will be remedied at an early date so that the child can be returned to the parent in the near future, or the continuation of the parent-child relationship greatly diminishes the child’s prospects for early integration into a stable and permanent home.” When determining whether to terminate pursuant to § 211.447.5(3), a circuit court is required to consider and make findings regarding certain factors:
*91 (a) The terms of a social service plan entered into by the parent and the ■ division and the extent to which the parties have made progress in complying with those terms;
(b) The success or failure of the efforts of the juvenile officer, the division or other agency to aid the parent on a continuing basis in adjusting his circumstances or conduct to provide a proper home for the child;
(c) A mental condition which is shown by competent evidence either to be permanent or such that there is no reasonable likelihood that the condition can be reversed and which renders the parent unable to knowingly provide the child the necessary care, custody and control;
(d) Chemical dependency which prevents the parent from consistently providing the necessary care, custody and control over the child and ■ which cannot be treated so as to enable the parent to consistently provide such care, custody and control!].]
Here, the circuit court found all three elements necessary for termination pursuant to § 211.447.5(3). The relevant “conditions” found by the circuit court were the following: the continuing neglect by Father; the inability of Father to care appropriately for Child; Father’s failure to engage in services; Father’s failure to provide a safe, stable, and healthy home environment; and Father’s substance abuse issues.[5] The circuit court also made specific findings as required by § 211.447.5(3) and, relevant to subdivision (d), found that Father had a chemical dependency to alcohol that could not be treated.[6]
*92 Father argues the circuit court’s decision to terminate pursuant to § 211.447.5(3) is not supported by substantial evidence because his past criminal convictions involving alcohol were insufficient evidence to support a finding that he has an untreatable chemical dependency. Father’s argument is premised on a misunderstanding of the statutory scheme, as he suggests that “[t]o establish grounds for termination of parental rights under [§ 211.447.5(3) ], clear, cogent and convincing evidence of at least one factor listed in subsection (a)-(d) must be presented to the trial court.” As previously explained by this Court, there is no statutory requirement that a factor listed under a ground for termination be proven by “clear, cogent and convincing evidence;” rather, that burden of proof applies to the ground for termination. See In re B.H., 348 S.W.3d 770, 774 (Mo. banc 2011); see also § 211.447.6. The factors listed in § 211.447.5(3)(a)-(d), including the existence of a chemical dependency, are just that—factors the circuit court must consider. But nothing in the statute says that parental rights may be terminated only when there is a finding on one of the listed factors that is supported by clear, cogent, and convincing evidence. Instead, parental rights may be terminated only when there is a ground for termination that is supported by clear, cogent, and convincing evidence. Section 211.447.6. For § 211.447.5(3), the ground for termination is defined by the three elements discussed above. Those three elements may exist independently and in the absence of any evidence regarding the listed factors. Accordingly, the relevant question before this Court is not whether there was substantial evidence to support the circuit court’s finding that Father has an untreatable chemical dependency. The relevant question is whether there was substantial evidence to support a finding of the three required elements of § 211.447.5(3).
Substantial evidence supported a finding of all three elements in this case. The first two elements were present because, at the time of the circuit court’s judgment, Child had been under the jurisdiction of the juvenile division for more than one year and Father, being incarcerated, was unable to care appropriately for Child or provide Child with a safe, stable, and healthy home environment. Therefore, “conditions of a potentially harmful nature continue[d] to exist.” Section 211.447.5(3). Regarding the third factor, Father will be incarcerated until at least November 2018, or at least 33 more months from the time of the circuit court’s judgment.[7] This means that Father’s inability to care appropriately for Child—whom he has never *93 met and with whom he has no parent-child bond—or provide Child with any kind of a home will continue at least until Child is nearly five years old. Meanwhile, Child has lived with foster parents since Child was only three months old and has developed a close familial bond with that family. These circumstances support both a finding that “there is little likelihood that [the harmful] conditions will be remedied at an early date” and a finding that “continuation of the parent-child relationship greatly diminishes the child’s prospects for early integration into a stable and permanent home.” Section 211.447.5(3) (emphasis added). Therefore, even if there were not substantial evidence to support a finding that Father has an untreatable chemical dependency, there was nonetheless substantial evidence to support termination pursuant to § 211.447.5(3).[8] The fact that Father has participated in the court-ordered treatment plan and sent correspondence and minor contributions to Child is not sufficient to bar termination. See C.V.E. v. Greene Cnty. Juvenile Office, 330 S.W.3d 560, 570-71 (Mo. App. 2010). Section 211.447.5(3) makes no exception for a parent who wants, but is unable, to rectify the harmful conditions.[9]
Father also argues the circuit court’s decision to terminate his parental rights pursuant to § 211.447.5(3) is against the weight of the evidence in that Father suggested a relative, Child’s grandmother, who was fit and willing to provide the necessary care for Child while Father is incarcerated. The dissent’s argument is likewise predicated on the grandmother’s ability to provide the necessary care for Child. At the time of the circuit court’s judgment, though, the circuit court had already overruled Father’s motion for placement of Child with the grandmother, finding that such placement was contrary to the best interest of Child. In other words, before the circuit court determined there was a ground for termination and before the circuit court determined termination was in the best interest of Child, the circuit court had already determined Child would not be placed with the grandmother. On appeal, Father does not directly challenge the circuit court’s ruling on his motion for placement with the grandmother. That is, Father makes no argument that the circuit court abused its discretion in denying placement with the grandmother. Essentially, then, both Father’s and the dissent’s argument is that the circuit court should have considered the ability of the grandmother to care for Child even though Child was not to be placed with the grandmother anyway. This is illogical—evidence of the grandmother’s ability to provide the necessary care for Child was irrelevant when considering termination pursuant to § 211.447.5(3) be *94 cause placement with the grandmother was no longer an option. Though the dissent may disagree with the circuit court’s ruling on placement, that ruling is most notably not a subject of Father’s appeal.[10]
B. Unfit to be a Party to the Parent-Child Relationship
Although this Court may affirm on only one ground, termination was also appropriate pursuant to § 211.447.5(6)(a), which provides for termination when:
The parent is unfit to be a party to the parent and child relationship because of a consistent pattern of committing a specific abuse including, but not limited to, specific conditions directly relating to the parent and child relationship which are determined by the court to be of a’ duration or nature that renders the parent unable for the reasonably foreseeable future to care appropriately for the ongoing physical, mental, or emotional needs of the child.
The circuit court’s finding on this ground was based on the lack of contact and bond between Father and Child and “Father’s volitional criminal activity” that resulted in incarceration.[11]
Father argues the circuit court’s finding pursuant to § 211.447.5(6)(a) is not supported by substantial evidence because there was no evidence of “specific abuse,” insofar as “abuse” is defined in Chapter 210 as “any physical injury, sexual abuse, or emotional abuse inflicted on a child other than by accidental means by those responsible for the child’s care, custody, and control[.]” Section 210.110(1). However, the definition of “abuse” on which Father’s argument relies does not apply here. For purposes of § 211.447.5(6)(a), the General Assembly has chosen to define a “consistent pattern of committing a specific abuse” to include “specific conditions directly relating to the parent and child relationship which are determined by the court to be of a duration or nature that renders *95 the parent unable for the reasonably foreseeable future to care appropriately for the ongoing physical, mental, or emotional needs of the child.” This definition, expressly provided in this context, supersedes any other definition when applying § 211.447.5(6)(a). See State ex rel. Jackson v. Dolan, 398 S.W.3d 472, 479 (Mo. banc 2013).
The dissent likewise refuses to accept that the General Assembly could have intended a “consistent pattern of committing a specific abuse” to mean anything other than traditional forms of abuse. Prior to a 2014 amendment, § 211.447,5(6) read:
The parent is unfit to be a party to the parent and child relationship because of a consistent pattern of committing a specific abuse, including but not limited to abuses as defined in section 455.010, child abuse or drug abuse before the child or of specific conditions directly relating to the parent and child relationship either of which are determined by the court to be of a duration or nature that renders the parent unable, for the reasonably foreseeable future, to care appropriately for the ongoing physical, mental or emotional needs of the child.
RSMo Supp. 2013 (emphasis added). As the court of appeals has aptly explained:
The [2014] amendment deleted the phrase “abuses as defined in section 455.010, child abuse or drug abuse before the child' or of;” deleted the phrase “either of;” but kept the phrase “including, but not limited to.” Plainly read, the amendment now expresses a clear and unambiguous legislative intent to treat “specific conditions directly relating to the parent and child relationship which are determined by the court to be of a duration or nature that renders the parent unable for the reasonably foreseeable future to care appropriately for the ongoing physical, mental, or emotional needs of the child” as a non-exclusive example of “a consistent pattern of committing a specific abuse.”
Interest of E.B.R. v. E.R., WD79507, 503 S.W.3d 277, 282, 2016 WL 6440419, at *4 (Mo. App. Nov. 1, 2016) (emphasis added) (internal footnote omitted).
“Specific conditions,” as used in § 211.447.5(6)(a), may include conditions that result from incarceration. See In re C.S., 351 S.W.3d 264, 267-68 (Mo. App. 2011). As discussed, Father’s volitional criminal activity has resulted in his incarceration until at least November 2018. At the time of the circuit court’s judgment, Child was two years old, Father had been incarcerated for the entirety of Child’s life, and Father would continue to be incarcerated for at least 33 more months. Therefore, even if visitation had been allowed previously and were allowed in the interim, it could be reasonably inferred that “specific conditions” rendered Father unable to care appropriately for Child’s physical, mental, or emotional needs until Child would be nearly five years old. Considering the limited contact Father would have with Child for the first five years of Child’s life, it could further be reasonably inferred that Father would be unable to care appropriately for Child for an additional period, if ever, following his release. See In re C.S., 351 S.W.3d at 268 (“Upon his release from prison, Father would have to begin working on his parenting skills and would have to begin' the process of both establishing a bond with children who have grown up without him and of making a home for them. As the trial court noted, this is a process that could take years.”). Giving due consideration to Child’s infancy, November 2018—and likely beyond— amounts to the “reasonably foreseeable future.” See id. As such, there was substantial evidence to support the circuit court’s *96 finding pursuant to § 211.447.5(6)(a), and Father’s argument pertaining to a lack of evidence on the types of abuse described in § 210.110 is misplaced.
The dissent suggests that the protection provided by § 211.447.7(6)’s directive that “incarceration in and of itself shall not be grounds for termination” “would be worthless if incarceration itself provides a separate basis for termination under a different subsection.” As discussed, § 211.447.7(6) does not apply to termination that is pursuant to § 211.447.5(6)(a). Nevertheless, incarceration in and of itself cannot serve as a basis for termination pursuant to § 211.447.5(6)(a) because incarceration in and of itself does not render a parent unable to care appropriately for a child for the reasonably foreseeable future. Rather, it is the duration of incarceration and the impact of such duration when considering all relevant circumstances, including the child’s age, that may render a parent unable to care appropriately for the child for the reasonably foreseeable future. See In re C.S., 351 S.W.3d at 267-68. Such is the case here. Termination of Father’s parental rights pursuant to § 211.447.5(6)(a) is not justified by his mere incarceration, but is justified by the duration of his incarceration when considering the infancy of Child.
As he does with § 211.447.5(3), Father additionally argues the circuit court’s finding pursuant to § 211.447.5(6)(a) is against the weight of the evidence because Father suggested a relative, Child’s grandmother, who was fit and willing to provide the necessary care for Child while Father is incarcerated. The dissent suggests the same. As discussed above, the circuit court had already overruled Father’s motion for placement of Child with the grandmother, finding that such placement was contrary to the best interest of Child. Moreover, § 211.447.5(6)(a) is expressly concerned with the fitness of the parent to care appropriately for the child, not the fitness of any of the parent’s relatives. Father does not argue there was persuasive evidence proving his fitness.
C. Best Interest of Child
In addition to challenging the grounds-for-termination findings, Father argues the circuit court abused its discretion in finding termination was in Child’s best interest because Father’s visitation requests were denied and he had suggested a relative who was fit and willing to provide the necessary care for Child while Father is incarcerated. “A trial court abuses its discretion when a ruling is clearly against the logic of the circumstances then before it and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration.” In re H.L.L., 179 S.W.3d 894, 896-97 (Mo. banc 2005). Father’s argument does not explain why the circuit court’s best-interest finding meets this standard;[12] he simply “ignores the testimony and evidence favorable to the circuit court’s findings and conclusions and merely recites evidence and purported inferences favorable to his position.” J.A.R., 426 S.W.3d at 632. Accordingly, Father’s challenge to the circuit *97 court’s best-interest finding is “of no analytical or persuasive value.” Id.
IY. Father’s Challenges to Procedural Rulings
A. Request to Appear at Trial in Person
Father first claims the circuit court’s denial of his request to appear at trial in person deprived him of his constitutional right to due process. Father argues that an incarcerated parent has a right to attend a termination hearing. This is incorrect. There is no constitutional right to appear in person at a civil trial. Call v. Heard, 925 S.W.2d 840, 846 (Mo. banc 1996). There is also no statutory right. Although § 491.230.2(1) allows an incarcerated parent to seek a writ of habe-as corpus ad testificandum to appear and attend a trial on termination of the person’s parental rights, an incarcerated parent does not have an unequivocal right to such writ upon request. Issuing the writ is within the discretion of the circuit court. Beckwith v. Giles, 32 S.W.3d 659, 663 (Mo. App. 2000). Father also argues his right to effective assistance of counsel was compromised because he “could not give real-time feedback to his counsel as testimony was being presented.” Father has no constitutional right to counsel in this context but, pursuant to § 211.462.2, a natural parent has a statutory right to counsel in a termination of parental rights proceeding and, therefore, an implied right to effective assistance of counsel. C.V.E., 330 S.W.3d at 574. However, a parent’s inability to assist counsel at trial does not render counsel’s assistance ineffective. In re W.J.S.M., 231 S.W.3d 278, 283-84 (Mo. App. 2007).
Father also states that he was unable to have private conversations with his counsel during trial due to the presence of Department of Corrections personnel while Father communicated via video-conference. He provides no authority or explanation beyond his mere conclusion as to why this deprived him of due process. “Where a party fails to support a contention with relevant authority or argument beyond conclusions, the point is considered abandoned.” Beatty v. State Tax Comm’n, 912 S.W.2d 492, 498-99 (Mo. banc 1995). The argument section of Father’s brief makes a passing reference to his inability to communicate confidentially with counsel during trial and then immediately proceeds to mention his inability to give real-time feedback during trial. Considering his point relied on argues his inability to give real-time feedback during trial infringed upon his right to effective assistance of counsel, the most that could be generously gleaned from Father’s brief is that he is arguing his inability to communicate confidentially with counsel during trial likewise infringed upon his right to effective assistance of counsel. But a parent does not have to be able to communicate at all with counsel during trial, let alone confidentially, for counsel to be effective. See In re W.J.S.M., 231 S.W.3d at 283. “The test is whether the attorney was effective in providing his client with a meaningful hearing based on the record.” Id. at 283-84. Although the dissent attempts to supply a different argument for Father by suggesting he was denied his constitutional right to access the courts pursuant to article I, § 14 of the Missouri Constitution, Father has never claimed a violation of his constitutional right to access the courts, and the dissent’s theory is not before this Court on appeal. See Mayes v. Saint Luke’s Hosp. of Kansas City, 430 S.W.3d 260, 266 (Mo. banc 2014).
B. Motion for Continuance
Father next challenges the circuit court’s denial of his motion for continuance on the day of trial. “A decision to *98 grant a continuance is within the sound discretion of the trial court.” Call, 925 S.W.2d at 846. Father argues the circuit court abused its discretion because he could not effectively prepare for trial without knowing how the circuit court would rule on his motion for placement with the grandmother. After being continued twice, trial was not held until nearly three months after Father filed his motion for placement. Even if it were accepted that Father’s strategy at trial depended on how the circuit court ruled on his motion for placement, Father had ample time to prepare for both contingencies. The circuit court did not abuse its discretion in denying Father’s motion for continuance.
C. Application for Change of Judge
Finally, Father challenges the circuit court’s denial of his application for a change of judge. Father does not argue that he was entitled to a change of judge without cause pursuant to Rule 121.02, but rather that the judge should have recused pursuant to Rule 121.01, which provides: “A judicial officer shall recuse when the judicial officer is interested, related to a party, has been counsel for a party in any proceeding, or is recused for any other reason.” Rule 2-2.11(A) directs that a judge shall recuse “in any proceeding in which the judge’s impartiality might reasonably be questioned.” Father argues there was reason to question the impartiality of the judge assigned to his termination trial because the same judge overruled his motion for placement with the grandmother. Such a circumstance does not require recusal. “Rulings against a party do not establish bias or prejudice on the part of a trial judge.” In re Marriage of Maupin, 829 S.W.2d 125, 127 (Mo. App. 1992).
Y. Conclusion
The circuit court’s judgment is affirmed.
Wilson and Russell, JJ., concur;
Breckenridge, C.J., concurs in result in separate opinion filed;
Stith, J., dissents in separate opinion filed;
Draper, J., concurs in opinion of Stith, J.

. Father requested in-person visitation with Child in July 2015 and September 2015, but the circuit court denied these requests, citing the long distance Child would have to travel. The foster home was located in Springfield, and Father was incarcerated in St. Joseph. Father did not seek any review from a higher court (e.g., a writ) of the circuit court's denial of in-person visitation.

. "The court may attach little or no weight to infrequent visitations, communications, or contributions. It is irrelevant in a termination proceeding that the maintenance of the parent-child relationship may serve as an inducement for the parent’s rehabilitation.” Section 211.447.8. Statutory citations for § 211.447 are to RSMo Noncum. Supp. 2014 unless otherwise noted. All other statutoiy citations are to RSMo 2000.

.Section 211.447.6 provides:
The juvenile court may terminate the rights of a parent to a child upon a petition filed *89 by the juvenile officer or the division ... if the court finds that the termination is in the best interest of the child and when it appears by clear, cogent and convincing evidence that grounds exist for termination pursuant to subsection 2, 4 or 5 of this section.

. Father’s brief properly presented the distinct legal claims of "not supported by substantial evidence” and "against the weight of *90 the evidence” by raising them in separate points relied on.

. In full, the circuit court's finding stated:
The minor child has been under the jurisdiction of the Court for more than one year and the conditions that led to the assumption of jurisdiction or conditions of a potentially harmful nature continue to exist and there is little likelihood that those conditions can be remedied at an early date so that the child could be returned to the mother or the father in the near future. Those conditions include the continuing neglect by the mother and the father, the inability and/or unwillingness of the mother and the father to provide the child with appropriate care and parenting, the mother’s ,and father’s failure or refusal to engage in services, the mother’s .failure and the father’s failure to provide the child with a safe, stable, and healthy home environment, and the mother’s and the father's substance abuse issues. Continuation of the parent-child relationship between the mother and the child greatly diminishes the child’s prospects for early integration into a stable and permanent home. Continuation of the parent-child relationship between the father and the child greatly diminishes the child’s prospects for early integration into a stable and permanent home.

. The dissent states that "the evidence does not show substance abuse since [Father’s] incarceration or that such abuse cannot be treated.” In addition to other evidence, the record established that Father was sentenced as a chronic offender for driving while intoxicated, which may be evidence of an untreatable chemical dependency. The circuit court found:
Based upon clear, cogent, and convincing evidence, the Court finds that father has a significant history of having a chemical dependency to alcohol and controlled substances as demonstrated by his pleas of guilty and convictions for the Class B felony of driving while intoxicated, as a chronic offender, and the Class C felony of possession of a controlled substance. The Court finds further that the father’s chemical dependency and criminal activity have resulted in his absence from the child. The Court finds that father does not have a period of sobriety long enough to convince this court that the child would bé safe in his care. ThP casé manager testified that the father told her' that he had been attending AA and NA meetings while in prison. The Court finds this testimony to be less than credible. No documentary evidence was presented *92 which would establish that the father is attending or has attended alcohol and drug treatment support groups. The case manager testified that the father had not provided information that would demonstrate that he has addressed his chemical dependency successfully. The father’s testimony was void of any remorse for his use and abuse of alcohol and controlled substances which contributed substantially to his incarceration. Based upon all of the evidence, the Court finds that the father’s imposed abstinence while incarcerated is not an accurate indicator of the father’s future behavior regarding his substance abuse and chemical dependency.
The Court finds that father has a chemical dependency to alcohol and controlled substances which prevents father from consistently providing the child with necessary care, custody, and control. The Court finds further that father’s chemical dependency cannot be treated, because father has not taken any significant, positive, consistent steps to treat his chemical dependency successfully in drug treatment services.

. As noted, Father has a conditional release date of November 14, 2018, and a maximum release date of July 14, 2021.

. This conclusion does not run afoul of § 211.447.7(6)'s directive that "incarceration in and of itself shall not be grounds for termination of parental rights" when considering termination pursuant to § 211.447.5(3). A court may still terminate parental rights when a ground for termination exists due to the duration of incarceration and the consequences of such duration. That is not termination based on "incarceration in and of itself." Here, the circuit court found: "The father has been incarcerated since before the child was bom. The father is not eligible for parole until November of 2018. The child has been under juvenile court jurisdiction for most of his young life. The child needs permanency now." This finding in support of termination goes to the duration of Father’s incarceration and the impact of such duration on an infant who has lived most of his life with a foster family.

. The dissent is also factually incorrect in asserting “the record shows [Father] made all reasonable attempts to obtain visitation.” As noted, Father sought no review (e.g., a writ) of the circuit court’s denial of in-person visitation.

. The dissent argues Father could not have challenged the ruling on placement in his appeal of the termination case because the ruling on placement was made in the custody case. But the question of whether Father, under these particular circumstances, could have challenged the ruling on placement in this appeal is not before this Court because no such challenge was made, And this Court need not answer the question because the fact remains that both Father’s and the dissent’s argument would require this Court to imper-missibly presume an unchallenged ruling was incorrect.

. In full, the circuit court's finding stated: Based upon clear, cogent, and convincing evidence, the Court finds that the father is unfit pursuant to Section 211.447.5(6)(a) RSMo,, due to specific conditions directly relating to the parent and child relationship that renders the parent unable, for the reasonably foreseeable future, to care appropriately for the ongoing physical, mental or emotional needs of the child. Based upon all of the evidence, the Court finds that the father has been incarcerated during all of the child’s lifetime. The father has not had any physical contact with the child. The child does not know who the father is and the child does not have a bond with the father. The father has sent correspondence to the child consistently; however, this effort to establish a bond between the father and the child has been unsuccessful. Father’s volitional criminal activity caused father to go to prison. The child has been in the same foster home since the child came under juvenile court jurisdiction in May of 2014. The child views his foster parents as his parents and calls them "mom” and "dad”. The Court previously denied the paternal grandmother’s request for placement because such a placement was contrary to the best interest of the child. The Court finds that the nurturing of a bond between the child and the father would take too long, if such a bond could be established at all. All of these conditions render the father unable, for the reasonably foreseeable future, to care appropriately for the physical, mental, and emotional needs of the child.

. The circuit court found that Child had no emotional ties to Father but had a child-parent relationship with his foster parents, that no additional services could be provided that would establish a bond between Father and Child, that Father’s testimony indicated he was more committed to his own interests than Child’s, that Father’s motion for placement of Child with the grandmother had been overruled because placement with the grandmother was contrary to the best interest of Child, that Father has been incarcerated since before Child was bom and would not be eligible for parole until November 2018, and that Child was in need of a permanent home now.