

# Missouri Court of Appeals

## Southern District

### Division Two

IN THE INTEREST OF K.L.M., ) 
a Minor Child )
)
A.N.C., and M.A.C., )
)
 Petitioners-Respondents, )
)
v. ) No. SD36740
)
S.L.M., Natural Father, ) **Filed: January 12, 2021**
)
 Respondent-Appellant, )
)
and )
)
MISSOURI DEPARTMENT of SOCIAL )
SERVICES, CHILDREN'S DIVISION, )
and MCDONALD COUNTY JUVENILE )
OFFICE, )
)
 Respondents. )

APPEAL FROM THE CIRCUIT COURT OF MCDONALD COUNTY

Honorable A. Christine Rhoades

**<u>AFFIRMED</u>**

S.L.M. ("Father") appeals the termination of his parental rights in, to, and over K.L.M.

("Child") on the statutory grounds of abandonment (*see* section 211.447.5(1)), neglect (*see*

section 211.447.5(2)), "failure to rectify" (*see* section 211.447.5(3)), and parental unfitness

(*see* section 211.447.5(5)).[1]  Father presents six points on appeal that claim the findings

---

[1] Unless otherwise indicated, all statutory references are to RSMo Cum. Supp. 2018.

supporting each statutory ground are against the weight of the evidence. Because Father's

sixth point has no merit and is dispositive of this appeal, we affirm.

## Standard of Review

> In order to terminate a parent's rights to his or her child, the trial court must find by clear, cogent, and convincing evidence that at least one ground for termination exists pursuant to section 211.447; if at least one ground for termination is found to exist, the trial court must then determine if termination is in the best interest of the child. *In the Interest of P.L.O.,* 131 S.W.3d 782, 788 (Mo. banc 2004). We review whether the statutory ground or grounds for termination have been proven by clear, cogent, and convincing evidence according to the standard set forth in *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976). *P.L.O.,* 131 S.W.3d at 788–89. "Thus, the trial court's judgment will be affirmed unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law." [*In re*] *I.Q.S.,* 200 S.W.3d [599,] 603 [(Mo. App. W.D. 2006)]. We review whether termination is in the best interest of the child for an abuse of the trial court's discretion. *P.L.O.,* 131 S.W.3d at 789. "In all of these determinations, the appellate court is deferential to the trial court's findings of fact and considers all of the evidence and reasonable inferences from the evidence in the light most favorable to the judgment." *I.Q.S.,* 200 S.W.3d at 603. We further defer to the trial court on issues of credibility, as the trial court is in a superior position to make such determinations. *In re J.L.B.,* 9 S.W.3d 30, 37 (Mo.App.1999). The trial court is free to believe all, some, or none of the testimony of any witness. *In re Adoption of W.B.L.,* 681 S.W.2d 452, 455 (Mo. banc 1984).

*In re Z.L.R.*, 347 S.W.3d 601, 605-06 (Mo. App. S.D. 2011).

## The Evidence

Viewed in the light most favorable to the judgment, *see id.* at 602-03, the relevant

evidence is as follows.[2] Child was born in 2004, and she was almost 16 at the time of trial.

Child was just shy of 13 when she was removed from Mother's home on May 15, 2017. On

that date, Child weighed only 30.2 pounds. Child was removed after a sibling reported that

---

[2] Any evidence contrary to the judgment is cited only to provide context for Father's arguments. The judgment also terminated the parental rights of Child's natural mother ("Mother"), but that termination is not at issue in this appeal, and we cite evidence concerning Mother only for context or when it is relevant to our resolution of Father's points.

her grandfather had touched her inappropriately, and Mother dismissed the possibility that such touching could have occurred.

When Child was removed from Mother's home, Father was in prison in San Diego, California. In 2008, Father was charged with murder for beating his elderly employer so badly that he went into a coma and died eleven months later. Father pleaded guilty to voluntary manslaughter and is not eligible for parole consideration until November 2024. At that time, Child will be 20 years old.

Natalie Fischer ("Ms. Fischer"), is a Children's Division supervisor, and she had supervised Child's case during the entire time that Child was in alternative care. Ms. Fischer testified that Child has "extensive medical issues" which include Down Syndrome, anoxic brain injury, and failure to thrive. Child is nonverbal, wheelchair bound, needs around-the-clock medical care, and receives her food through a gastrostomy tube. Child sees numerous doctors and specialists on a regular basis, receives in-home health care, must be given numerous medications at certain times each day, and has undergone multiple surgical procedures during her time in alternative care.

Although Child is non-verbal, Father called Child and her siblings once or twice a month when he was first incarcerated. After Child was removed from Mother's home, Father did not call Child at all. During the three-year period that Child was in care, Father wrote Child a total of five letters. Father admitted that he has no firsthand knowledge of Child's medical needs as he last lived with Child in 2005.

## Analysis

We must affirm a termination of parental rights if substantial evidence supports at least one statutory ground for termination found by the trial court and that

termination in is in the best interest of the child.[3]  ***In re Q.A.H.***, 426 S.W.3d 7, 12

(Mo. banc 2014).  Father's sixth point, which challenges termination on the ground of

parental unfitness, is dispositive of this appeal.[4]

> The parent is unfit to be a party to the parent and child relationship because of
> a consistent pattern of committing a specific abuse including, but not limited
> to, specific conditions directly relating to the parent and child relationship
> which are determined by the court to be of a duration or nature that renders the
> parent unable for the reasonably foreseeable future to care appropriately for the
> ongoing physical, mental, or emotional needs of the child.

Section 211.447.5(5)(a).

We agree with the trial court that the following constituted substantial evidence

supporting termination on that ground.  Father had been incarcerated in California since April

2008 on a 19-year sentence for voluntary manslaughter, and he would not be eligible for

parole consideration until 2024, at which time Child would be 20 years old.  At the time of

trial, Father had not seen Child for 12 years.

Father does not dispute these findings.  Instead, he claims that they do not meet the

criteria for termination based upon parental unfitness because "there was no evidence of abuse

by [Father]."  Our supreme court has rejected that argument.

In ***In re J.P.B.***, 509 S.W.3d 84, 94-95 (Mo. banc 2017), our high court concluded that

the legislature defined abuse in this context to mean "specific conditions directly relating to

the parent and child relationship which are determined by the court to be of a duration or

nature that renders the parent unable for the reasonably foreseeable future to care

appropriately for the ongoing physical, mental, or emotional needs of the child."  ***Id.*** (citing

---

[3] Father does not challenge the trial court's finding that termination was in Child's best interest.
[4] In the points relied on section of his brief, Father claims the finding of parental unfitness is against the weight of the evidence.  In the argument section of his brief, Father attempts to change course by claiming that the finding was not supported by substantial evidence.  For the reasons stated *infra*, Father's argument would fail under either challenge.

section 211.447.5(6)(a), RSMo Noncum. Supp. 2014)).  Such specific conditions may include those that result from incarceration.  ***J.P.B.***, 509 S.W.3d at 95.

The father in ***J.P.B.*** had been incarcerated for the first two years of the child's life and his confinement would continue for at least another 33 months.  ***Id.***  Our high court noted that

> incarceration in and of itself cannot serve as a basis for termination pursuant to [section] 211.447.5(6)(a)[, RSMo Noncum. Supp. 2014,] because incarceration in and of itself does not render a parent unable to care appropriately for a child for the reasonably foreseeable future.  Rather, it is the *duration* of incarceration and the impact of such duration when considering all relevant circumstances, including the child's age, that may render a parent unable to care appropriately for the child for the reasonably foreseeable future.

***Id.*** at 96.  As in ***J.P.B.***, termination on the ground of parental unfitness was appropriate here because Father would not be released for several years, and it could be "reasonably inferred that Father would be unable to care appropriately for Child for an additional period, if ever, following his release."  ***Id.*** at 95.

Similarly, we upheld termination for parental unfitness based upon "substantial evidence . . . that Father's years-long absence from Child [due to Father's incarceration] has prohibited the formation of the necessary parent-child relationship, and . . . Father is unfit to parent Child within the reasonably foreseeable future based upon that evidence[.]"  ***Z.L.R.***, 347 S.W.3d at 609.  *See also* ***In re C.S.***, 351 S.W.3d 264, 267-68 (Mo. App. W.D. 2011) (holding termination for parental unfitness appropriate due to lengthy incarceration that rendered the father unable to receive services or exercise visitation until his

later release).[5]

Here, substantial evidence supported the trial court's findings that Father had not seen Child for 12 years due to his incarceration, Father would not be eligible for release until Child would be a 20-year-old adult, and "Father would be unable to care appropriately for Child for an additional period, if ever, following his release." *J.P.B.*, 509 S.W.3d at 95.

The portion of the judgment that terminated Father's parental rights is affirmed.

DON E. BURRELL, J. – OPINION AUTHOR

GARY W. LYNCH, J. – CONCURS

MARY W. SHEFFIELD, J. – CONCURS

---

[5] In his reply brief, Father argues that *Z.L.R.* and *C.S.* are no longer good law because the language of section 211.447.5(5) was changed after those cases were decided on appeal. Father is correct that the language has changed (most notably by dropping the specific references to child abuse and drug abuse), but that change does not help him. Section 211.447(5)(a) currently provides:

> The parent is unfit to be a party to the parent and child relationship because of a consistent pattern of committing a *specific abuse including, but not limited to, specific conditions directly relating to the parent and child relationship* which are determined by the court to be *of a duration or nature that renders the parent unable for the reasonably foreseeable future to care appropriately for the ongoing physical, mental, or emotional needs of the child.* (Emphasis added.)

We recognize that this definition is much broader than what has traditionally been thought of as "abuse," but our supreme court relied upon this same statutory definition in deciding *J.P.B.*, which is substantially the same as the language relied upon in *Z.L.R.* and *C.S.*, and we are required to follow our high court's most recent controlling decision. *Weil v. Director of Revenue*, 304 S.W.3d 768, 770 (Mo. App. E.D. 2010); Mo. Const. art. V, sect. 2. In this case, Father's intentional, criminal, physical abuse of someone other than Child resulted in his inability to appropriately care for Child for the foreseeable future.