

# Missouri Court of Appeals

## Southern District

### Division Two

In Re the Adoption of:                    )
                                          )
I.M.W., a female minor child,             )
                                          )
C.R.R. and V.L.R.,                        )
                                          )
            Respondents,                  )
                                          )        No. SD34476
       vs.                                )        Filed:  February 1, 2017
                                          )
B.A.T.,                                   )
                                          )
            Appellant.                    )

### APPEAL FROM THE CIRCUIT COURT OF CHRISTIAN COUNTY

Honorable Larry G. Luna, Circuit Judge

**<u>AFFIRMED</u>**

B.A.T. ("Father") appeals from a judgment entered by the Juvenile Division of the Circuit Court of Christian County ("trial court") on January 28, 2016, concluding Father abandoned Child, and granting a petition for adoption of his daughter, I.M.W. ("Child"), by V.L.R. ("Stepfather). In one point on appeal, Father claims the trial court erred in terminating his parental rights on the basis of abandonment and a mental condition. Finding no merit to Father's claims, we affirm the judgment of the trial court.

**Factual and Procedural Background**

On September 2, 1997, Father pled guilty, under Chapter 720 of the Illinois Revised Statute 5/12-14.l(a)(l), to two counts of committing a sexual act with a child under the age of 13. In addition, at the same hearing, Father was found to be a sexually dangerous person ("SDP") under Illinois' Sexually Dangerous Persons Act ("SDPA"),[1] after Father stipulated to the findings of two psychiatrists who found him to be a SDP. Following the hearing, the Illinois court appointed the Illinois Department of Corrections ("DOC") as Father's guardian and committed Father to the custody of the ("DOC").

On August 2, 2002, the Illinois court, finding that Father was no longer sexually dangerous within the institutional confines of the DOC, entered an order conditionally releasing him.[2] The order placed numerous conditions on Father's release. Father was to live in a residential center until a determination was made that he could live independently; Father was to obey parole rules and regulations, and all laws; and Father could not be alone with children or young adolescents without the consent and/or supervision of treatment personnel.

While on conditional release, Father married Mother in October 2004, in Romeoville, Illinois, where they resided. Child was born to Mother and Father in April 2007. Because of

---

[1] The Illinois SDPA required two qualified evaluators, i.e., reputable, licensed physicians or psychologists, or other licensed professionals specializing in the evaluation of sex offenders, to examine Father to determine whether he was sexually dangerous. Under the SDPA, a court may only commit a person if found to suffer from a mental disorder that predisposes a person to engage in acts of sexual violence. In addition, the SDPA imposed proof that a person so afflicted must additionally suffer from criminal propensities to the commission of sex offenses and demonstrated propensities toward acts of sexual assault or acts of sexual molestation of children. Illinois employs the same standard of proof in making such determinations, clear and convincing, as is required by Missouri courts in making findings about the appropriateness of adoption.

[2] The SDPA provides that if a person appears no longer to be dangerous but it is impossible to determine with certainty under conditions of institutional care that the person has fully recovered, the court shall enter an order permitting the person to go at large subject to such conditions of supervision as will adequately protect the public. If the person is found to be no longer dangerous, the court is obligated to discharge the person. Father was not discharged but was only "conditionally released."

Father's SDP status, he had to remove himself from the marital home until the Department of Children's and Family Services ("DCFS") could investigate whether it was suitable for him to live in the home with Child. After DCFS's investigation, which included evaluations by two psychiatrists, Father was permitted to return to the home in June 2007, under a protection plan. The protection plan provided in part that Father could not be alone with Child.

In October 2007, the state of Illinois filed a petition to revoke Father's conditional release asserting that: (1) Father failed to attend a mandatory counseling session on October 17, 2007; (2) on the same day, Father removed his tracking device and could not be located at his home; and (3) in July 2007, Father sexually assaulted or abused a 16-year-old girl while working at the girl's home. After a hearing, the Illinois court revoked Father's conditional release and he was remanded back to the custody of the DOC.

Mother moved with Child to Missouri in August 2008, to live with family. Between October 1997 and August 2008, Mother took Child to visit Father on at least three occasions. When Mother decided to move to Missouri, she notified Father and provided him the address and phone number of where she and Child would be living. After arriving in Missouri, Mother accepted approximately two collect calls from Father, and Father sent a few cards and letters. Thereafter, Father stopped calling.

Mother was not working at the time Father was arrested in October 2007. Mother sold Father's construction equipment to raise money for living expenses for her and Child. She eventually filed for bankruptcy, and was left with a vehicle, some furniture, and a small joint checking account with an approximate balance of $1,000. She received no financial assistance from Father. After Father knew Mother was returning to Missouri with Child, he withdrew $500 from the joint checking account without notifying Mother. Mother was using the funds from that

3

bank account to pay the marital bills and also to help pay for the move to Missouri. Father's removal of the $500 from the checking account caused several checks written by Mother to be returned insufficient funds, and the vehicle Mother depended on for transportation was almost lost due to nonpayment. Child depended upon Mother's income at the time, and very nearly became homeless.

Mother divorced Father on January 7, 2009. Under the judgment of dissolution, Father was not required to pay any child support for Child. Father remained incarcerated, but received $200-$400 per month from relatives. Father spent the money on food, tennis shoes, boots, clothing and a television for himself. Father sent no money to Mother for Child, but only sent Child a Toys R Us gift card in a nominal amount.

Child has had a relationship with Stepfather since August 2008. Mother and Stepfather began dating in October 2008, and were married in February 2011. Stepfather provided financial support to Mother and Child up to and continuing after their marriage.

On July 26, 2013, Mother and Stepfather filed a "Petition for Step-Parent Adoption" claiming that Father had willfully abandoned Child in failing to provide the necessary care and protection for a period of at least six months prior to the filing of the petition, and Father suffered from a mental condition that rendered him unable to provide Child with the necessary care and protection.

On December 2, 2013, Father filed a petition for visitation so as to allow contact between him and Child. However, Father failed to prosecute the cause resulting in the court's dismissal of the petition.

A trial was held on the Petition for Step-Parent Adoption on November 19, 2015. Mother, Father, and Stepfather all testified. Father specifically testified that he believed the mental

condition that caused him to be incarcerated was "reversible[,]" but did not think the "criminal propensit[y] to sexually assault children" would ever go away.

Also testifying was Sherry Gott ("Gott"), a 15-year-licensed clinical social worker employed by SOS Forensic Social Services and Counseling. Gott testified consistent with her report of July 1, 2015, and her addendum to that report of November 18, 2015. She performed a home study or post-placement assessment for adoption purposes at the request of the trial court.

Gott found Child to have no relationship with Father, and that Father had not participated in Child's life as a father figure in any manner. Gott's investigation revealed that Father was a SDP, and that he had a lengthy criminal history of perpetrating sexual offenses against young females going back to 1997. It was her opinion that a person who admitted to a mental defect, confirmed by two psychiatrists, and a finding of mental illness with a criminal propensity to molesting children, had a significant risk of re-offending. She found the age of Father's first victim to be relevant because it further solidified that Father suffered from a significant risk of re-offending. Gott testified that Father's re-offense in 2007 when he sexually abused a 16-year-old girl, demonstrated a pattern of behavior that Father consistently sought out minor females. It was also relevant to her that Father continued to be incarcerated as a SDP.

It was Gott's opinion, to a degree of certainty as understood by people practicing in her field, that a nuclear family relationship between Mother, Stepfather, and Child was in the best interest of Child. She did not believe there was a reasonable likelihood that Father's condition would be reversed, and that he would ever be able to knowingly provide the necessary care and protection for Child. In her opinion, Child would be at risk of victimization by Father. Gott testified that based on Father's incarceration and his continuing incarceration as a SDP, Father suffered from a mental illness.

5

The guardian ad litem filed her report on November 30, 2015, concluding that the adoption of Child by Stepfather was in the best interest of Child.

On August 9, 2016, the trial court entered its "Judgment and Decree of Adoption." The trial court found that Father abandoned Child, Father suffered from a mental illness of a kind and duration that prevented Father from knowingly caring for Child, and Father's condition predisposed him to engage in acts of sexual violence upon Children. The trial court found that Father's consent to the adoption of Child was not required pursuant to section 453.040(6)-(7),[3] and that Child was "for all legal intents and purposes, . . . the child of [Mother] and [Stepfather]." This appeal followed.

In one point on appeal, containing two subparts, Father claims the trial court erred in terminating Father's parental rights pursuant to section 453.040 "because none of the statutory requirements for termination without consent were supported by clear, cogent, and convincing evidence," specifically asserting in two subpoints that: (1) there was no substantial evidence that Father abandoned Child, and the finding that Father abandoned Child was against the weight of the evidence; and (2) there was no substantial evidence that Father suffered from a mental condition preventing him from effectively parenting.[4]

**Standard of Review**

"The clear, cogent, and convincing standard of proof applies in chapter 453 termination cases and adoptions." *In re Adoption of C.M.B.R.*, 332 S.W.3d 793, 819 (Mo. banc 2011). This

---

[3] All references to statutes are to RSMo 2000, unless otherwise indicated.

[4] Father's point is multifarious, and consequently preserves nothing for appellate review. "However, in cases involving the welfare of children, this Court is typically more tolerant regarding the technical requirements of Rule 84.04 when the questions presented relate to the welfare of children as long as the argument is sufficient in conjunction with the points relied on to ascertain the issues being raised." *S.I.E. v. J.M.*, 199 S.W.3d 808, 821 (Mo.App. S.D. 2006) (internal quotation and citation omitted). We find that the deficiency of Father's point is not so deficient as to substantially impede our review and, *ex gratia*, we will exercise our discretion and review the appeal on the merits.

6

"clear, cogent, and convincing" standard is said to be met if the scales "instantly tilt" in favor of a proposition when the *factfinder* weighs the evidence pro and con. *Id.* at 815.

However, *C.M.B.R.* also "reinforced the generally accepted principle in all types of bench-tried cases that circuit courts are better positioned to determine witness credibility and weigh evidence in the context of the whole record than an appellate court." *J.A.R. v. D.G.R.*, 426 S.W.3d 624, 626 (Mo. banc 2014) (citing *C.M.B.R.*, 332 S.W.3d at 815-16). Thus:

- Since trial judges are best positioned to weigh credibility, testimony, and evidence in the context of the whole record, *they* decide whether scales "instantly tilt."

- An appellate court does *not* review this "clear, cogent, and convincing"/"instantly tilt" finding by re-evaluating the evidence through its own perspective. Instead, as in other bench-tried civil cases, appellate review is per *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), with the trial court's judgment affirmed unless no substantial evidence supports it, it is against the weight of the evidence, or it erroneously declares or applies the law.

*See J.A.R.*, 426 S.W.3d at 626-27; *C.M.B.R.*, 332 S.W.3d at 815. "*C.M.B.R.* laid to rest any argument that the 'clear, cogent, and convincing' burden of proof requires this Court to consider any contrary evidence when reviewing whether the judgment is supported by substantial evidence." *J.A.R.*, 426 S.W.3d at 626 n.4. This is because the reviewing appellate court "is to recognize that the circuit court is free to disbelieve any, all, or none of the evidence, and it is not the reviewing appellate court's role to re-evaluate the evidence through its own perspective." *Id*. at 627.

### Analysis

#### *Point I(A) - Willful Abandonment*

The first portion of Father's Point I argues that the trial court's finding that Father willfully abandoned Child was unsupported by substantial evidence; the subpart (A) to this argument argues that this finding was against the weight of the evidence. As our supreme court has indicated,

"[t]hese are distinct claims.  They must appear in separate points relied on in the appellant's brief to be preserved for appellate review." *Ivie v. Smith*, 439 S.W.3d 189, 199 n.11 (Mo. banc 2014).

While Father's brief recites the mandatory analytical sequence set forth by our Court in *Houston v. Crider*, 317 S.W.3d 178, 187 (Mo.App. S.D. 2010), for an against-the-weight-of-the-evidence challenge, the substance of his argument does not comport with *Houston*'s requirements.

[A]n against-the-weight-of-the-evidence challenge requires completion of four sequential steps:

(1)  identify a challenged factual proposition, the existence of which is necessary to sustain the judgment;

(2)  identify all of the favorable evidence in the record supporting the existence of that proposition;

(3)  identify the evidence in the record contrary to the belief of that proposition, resolving all conflicts in testimony in accordance with the trial court's credibility determinations, whether explicit or implicit; and,

(4)  demonstrate why the favorable evidence, along with the reasonable inferences drawn from that evidence, is so lacking in probative value, when considered in the context of the totality of the evidence, that it fails to induce belief in that proposition.

*Houston*, 317 S.W.3d at 187; *see Ivie*, 439 S.W.3d at 205-206.

Father's failure to frame his argument in this mandatory analytical sequence "render[s] this argument analytically useless." *Matter of the Eberle Family Trust Two (2)*, 481 S.W.3d 592, 599 (Mo.App. S.D. 2016).

Even without this defect, Father's argument would still fail because there was substantial evidence in the record to support the trial court's finding that Father willfully abandoned Child, and that finding was not against the weight of the evidence.  The trial court, in its findings of fact and conclusions of law, found that:  Father was incarcerated; Father removed funds from a joint bank account without telling Mother beforehand even though Father knew that Mother and Child

8

needed the funds for their move from Illinois to Missouri, it caused several checks of Mother's to be returned for insufficient funds, and nearly caused Mother and Child to become homeless; Father's only support of Child was a Toys R Us gift card of nominal value; Father received between $200-$400 per month from family during the course of his incarceration and spent that money on himself at the place of his incarceration; Father, despite a reasonable ability to locate Mother and Child, failed to make substantive efforts to communicate with Child during Father's incarceration, including the 6 months after the petition was filed; and while Father filed a request to modify the dissolution decree to allow contact between himself and Child, he waited more than four months into the adoption proceedings to file it and the petition was dismissed for failure to prosecute, evincing as the trial court put it, a mere "token interest in maintaining contact with [Child]." On the basis of this evidence, the trial court found that Father's "lack of involvement goes beyond what is attributable to the estrangement and discouragement caused by the enforced separation [of prison.]" These findings were supported by the record, and were not against the weight of the evidence. Point I(A) is denied.

### *Point I(B) - Father's Mental Condition*

The sub point (B) to Father's point on appeal is that the trial court erred in terminating Father's parental rights because there was insufficient evidence that Father's mental condition prevented him from adequately parenting pursuant to section 453.040(6).

Like Father's willful abandonment argument, Father's mental condition argument fails to follow the mandatory analytical sequence set forth by ***Houston***.

> A not-supported-by-substantial-evidence challenge requires completion of three sequential steps:
>
> (1) identify a challenged factual proposition, the existence of which is necessary to sustain the judgment;

9

(2) identify all of the favorable evidence in the record supporting the existence of that proposition; and,

(3) demonstrate why that favorable evidence, when considered along with the reasonable inferences drawn from that evidence, does not have probative force upon the proposition such that the trier of fact could not reasonably decide the existence of the proposition.

*Houston*, 317 S.W.3d at 187.

Failure to comply with *Houston*'s mandatory dictates renders Father's argument analytically useless. Even if this were not so, Father's point would still fail because the trial court's finding that Father suffered from a mental condition was supported by substantial evidence.

The trial court made specific findings on this issue in its Judgment. The trial court noted the opinion of Sherry Gott, a licensed clinical social worker, whose home study provided a "comprehensive review of the individuals subject to" the trial court's determinations. Gott provided evidence that Father had a mental condition rendering him unable to act knowingly for which there was no reasonable likelihood that he would recover, and which rendered Father unable to provide Child necessary care and protection. Gott testified that the elimination of Father from Child's parentage would promote Child's best interest, as would assigning Child's custody to Mother and Stepfather.

As the trial court also noted, Father testified that even if he were eventually discharged or conditionally released, he would not be permitted into the state of Missouri farther than St. Louis for the purpose of visitation with Child. Father admitted he suffered from the mental health condition that led to his classification as a SDP under Illinois law, and indicated that he would always harbor such thoughts. As the trial court indicated:

10

Except for the time the Illinois courts conditionally released him, [Father] has remained in state control pursuant to the Illinois SDPA for approximately 20 years as a result of his condition. When he was released[,] and by his own admission, he reoffended the very month he was permitted to reside, with severe restrictions, in the same home as [Child].

The trial court indicated that it gave "little weight to [Father]'s last-minute filing of an Application Showing Recovery on August 11, 2015, undertaken two weeks before the last trial setting of August 25, 2015."

This was substantial evidence to support the trial court's finding that Father suffered from a mental condition that rendered him unable to effectively parent pursuant to section 453.040(6). Point I(B) denied.

The judgment and decree of the trial court is affirmed.

WILLIAM W. FRANCIS, JR., J. – OPINION AUTHOR

NANCY STEFFEN RAHMEYER, J. – CONCURS

DANIEL E. SCOTT, J. - CONCURS