IN the INTEREST OF Z.L.G.,

A.L.A.G., Appellant,

v.

Greene County Juvenile Office, Respondent.

No. SD 34959

Missouri Court of Appeals,
Southern District,
en banc.

FILED: November 16, 2017

Appellant's attorney: Marsha D. Jackson, Springfield.

Respondent's attorney: R. Paul Shackelford.

DANIEL E. SCOTT, J.

We consider a judgment terminating a mother's parental rights, initially addressing our standard of review because it dictates how we must view the record, and in so doing, expressly reject our older interpretations inconsistent with recent controlling precedent.

Termination of parental rights (TPR) is a two-step process. First, a trial court must find by clear, cogent, and convincing evidence at least one § 211.447 ground for termination. *Adoption of C.M.B.R.*, 332 S.W.3d 793, 815 (Mo. banc 2011). This "clear, cogent, and convincing" standard is said to be met if the scales instantly tilt toward termination when the factfinder weighs the evidence pro and con. *Id.* at 815.

Here, the trial court found by clear, cogent, and convincing evidence three statutory grounds for termination—abandonment, neglect, and failure to rectify. *See* § 211.447.5(1)-(3) RSMo as amended through 2016.

An appellate court reviews whether clear, cogent, and convincing evidence supports termination under *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). *C.M.B.R.*, 332 S.W.3d at 815. "Therefore, the trial court's judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Id.* (citing *Murphy*, 536 S.W.2d at 32). Only one statutory termi-

nation ground is needed to sustain the judgment. *Id.* at 816 n.17.

In this appeal, Mother [1] charges in three points that the abandonment, neglect, and failure to rectify findings are not based on substantial evidence. Yet she repeatedly acknowledges evidence that supports those findings, generally in efforts to minimize such proof or reasonable inferences supporting termination. The true thrust of Mother's arguments is that proof of the termination grounds was not "clear, cogent, or convincing" when weighed against her own evidence. She even repeats to us the same "reminder" three different times:

> As a reminder, parental rights can only be terminated if a ground is proven by clear, cogent, and convincing evidence. "Clear, cogent, and convincing evidence is evidence that instantly tilts the scales in favor of termination *when weighted* [sic] *against the evidence in opposition* and the finder of fact is left with the abiding conviction that the evidence is true." *In re S.M.H.*, 160 S.W.3d 355, 362 (Mo. banc 2005). (emphasis added [by Mother] ).

That accurately states the trial court _standard of proof_, but as a _standard-of-review_ reminder to this court on appeal, it reflects a misunderstanding that we recently sought to correct in ***Adoption of I.M.W.***, 522 S.W.3d 301, 306-07 (Mo.App. S.D. 2017). Before we return to that case, we offer some history.

For decades, appellate courts from time to time believed they should review appeals as Mother suggests. For example, our Western District in 1980 undertook to consider "the application of the test to be applied in a review of a court-tried case as set forth in *Murphy v. Carron*, 536 S.W.2d

30, 32[ 1-3] (Mo. banc 1976), when the standard of proof is by clear, cogent and convincing evidence" and concluded that:

> Substantial evidence as used in *Murphy* means clear, cogent and convincing when that standard of proof is applicable. Thus, if it cannot be said that the judgment in this case is supported by clear, cogent and convincing evidence, then it cannot be said the judgment is supported by substantial evidence, and under *Murphy v. Carron*, must be reversed.

***Matter of O'Brien***, 600 S.W.2d 695, 697-98 (Mo.App. W.D. 1980).

This district followed suit. "In a parental rights termination case, 'substantial evidence,' as the term is used in *Murphy v. Carron*, means 'clear, cogent, and convincing evidence.' " ***Interest of M.J.A.***, 826 S.W.2d 890, 897 (Mo.App. S.D. 1992) (citing ***O'Brien***). " 'Substantial evidence' and 'the weight of the evidence,' as those terms are used in *Murphy v. Carron*, 536 S.W.2d at 32[1], must satisfy the applicable standard of proof." ***Estate of Dawes***, 891 S.W.2d 510, 522 (Mo.App. S.D. 1994) (citing ***M.J.A.***). All three districts followed this approach into the current decade, at least on occasion.[2] ***C.M.B.R.***'s dissenting judges expressed a similar view (332 S.W.3d at 826-28 (Stith, J., dissenting)) and charged that the principal opinion erred in not considering contrary evidence in the record. *Id.* at 827, 828.

Yet three years later, in ***J.A.R. v. D.G.R.***, 426 S.W.3d 624 (Mo. banc 2014), our supreme court _unanimously_ agreed and declared that:

- "*C.M.B.R.* laid to rest any argument that the 'clear, cogent, and convinc-

---

1. We will refer to the affected parties as "Mother" and "Child."

2. *See, e.g.,* ***In re S.M.F.***, 393 S.W.3d 635, 644 (Mo.App. W.D. 2013); ***In re J.M.***, 328 S.W.3d 466, 471 (Mo.App. E.D. 2010); ***In re T.A.L.***, 328 S.W.3d 238, 246 (Mo.App. W.D. 2010); ***In re D.O.***, 315 S.W.3d 406, 423-24 (Mo.App. S.D. 2010).

ing' burden of proof requires this Court to consider any contrary evidence when reviewing whether the judgment is supported by substantial evidence." 426 S.W.3d at 626 n.4.

- *C.M.B.R.* also "reinforced the generally accepted principle in all types of bench-tried cases that circuit courts are better positioned to determine witness credibility and weigh evidence in the context of the whole record than an appellate court." *Id.* at 626.

- Thus, "it is not the reviewing appellate court's role to re-evaluate the evidence through its own perspective." *Id.* at 627.

- Instead, the appellate court is to recognize that the trial court "is free to disbelieve any, all, or none of the evidence," and properly "receives deference on factual issues because it is in a better position not only to judge the credibility of the witnesses and the persons directly, but also their sincerity and character and other trial intangibles which may not be completely revealed by the record." *Id.* (internal quotation marks omitted).

From these latest controlling declarations, we concluded in *I.M.W.*, 522 S.W.3d at 306-07, that (1) trial judges, not appellate courts, are best-suited to and properly tasked with deciding whether proof is "clear, cogent, and convincing" and "instantly tilts" the termination scales; and (2) an appellate court should not re-evaluate "clear, cogent, and convincing" findings through its own perspective, but should conduct a straight *Murphy v. Carron* review as in other non-jury cases.

■ Our high court's latest TPR decisions do not change these views, at least as to Mother's no-substantial-evidence charges here.[3] Particularly as to those, *J.A.R.* and *C.M.B.R.* are not weakened by any later opinion, but are confirmed by *Interest of J.P.B.*, 509 S.W.3d 84, 90 (Mo. banc 2017), which strengthens our following understandings about appellate review of no-substantial-evidence TPR challenges:

- The "clear, cogent, and convincing" determination is a *trial court* function. *C.M.B.R.*, 332 S.W.3d at 815.

- A trial court does so as a *factfinder* by *weighing* termination evidence "*against the evidence in opposition.*" *Id.* (our emphasis).

- Appellate courts cannot properly do this because:

  - We *ignore* contrary evidence in reviewing whether termination was supported by substantial evidence. *J.A.R.*, 426 S.W.3d at 626 n.4. Accord, *J.P.B.*, 509 S.W.3d at 90. Thus, we *cannot* weigh the evidence pro *and con* on such claims.

  - We are not *factfinders*, and unlike trial courts, we cannot directly judge witness credibility, sincerity, character, and other trial intangibles not completely revealed by the record. *J.A.R.*, 426 S.W.3d at 627. Accord, *J.P.B.*, 509 S.W.3d at 90.

- Therefore, "it is *not* the reviewing appellate court's role to re-evaluate the evidence through its own perspective." *J.A.R.*, 426 S.W.3d at 627. Accord, *J.P.B.*, 509 S.W.3d at 90.

---

3. *See Interest of T.T.G. v. K.S.G.*, SC 96153, 530 S.W.3d 489, 2017 WL 4479198 (Mo. banc Oct. 5, 2017); *S.S.S. v. C.V.S.*, SC 96307, 529 S.W.3d 811, 2017 WL 4479201 (Mo. banc Oct. 5, 2017). The latter case disapproved

*C.M.B.R.* and many other cases in one unrelated respect; *i.e.*, to the extent they stated that trial courts receive greater deference in custody and adoption cases than otherwise. *S.S.S.*, 529 S.W.3d at 816, n.3.

Contrary statements in **D.O., Estate of Dawes, M.J.A.,** or our other opinions should no longer be followed.[4]

Guided by the foregoing principles, we now summarize the background.

## Background

For the first years of Child's life, Mother used methamphetamines and frequently left Child strapped or taped in a car seat all day, diapers soiled. Mother had a mutually-abusive relationship with her boyfriend whom she stabbed in 2015 while Child watched. Child lived with his maternal grandparents while Mother was jailed, but was returned to Mother's care after she was released, met with child-welfare personnel, and agreed to engage in intensive in-home services ("IIS"), drug treatment, and anger-management classes.

Within two weeks, Mother had refused drug testing, stopped going to treatment and classes, quit IIS, and said she did not want Children's Division in her home any more. An abuse/neglect petition was filed in November 2015 outlining Mother's situation and refusal of services. Child was placed back with his grandparents. Mother attended the protective custody hearing with her attorney and was ordered to participate in family treatment court.

Instead, Mother distanced herself from the juvenile case and even from Child. She visited Child only three times, the last in December 2015. She did not maintain contact with her appointed attorney or Child's case worker. She did not participate in family treatment court as ordered. She did not attend the January 2016 jurisdictional/dispositional hearing. At that hearing, Mother's visits with Child were suspended and her appointed attorney was discharged.[5]

Mother also violated her criminal probation and failed to appear for violation hearings. In March 2016, her probation was revoked and a 180-day sentence was executed. Mother sent other letters from jail, but none to Child.

The case goal changed to adoption in August 2016. A termination petition was filed. Mother was served in jail. Days after her late-August jail release, Mother sought and was appointed counsel for the TPR proceeding. Yet Mother did not contact Child's case worker until mid-October, and did not meet with her appointed TPR counsel until a week before the January 2017 TPR hearing.

It was shown at that hearing that, aside from gaining employment, Mother's circumstances were no better than when the court assumed jurisdiction over Child some 15 months earlier:

- Mother had not visited or otherwise contacted Child for over a year.

---

4. To disregard **C.M.B.R.** and **J.A.R.**, consider contrary evidence, and re-evaluate through our own perspective whether proof was "clear, cogent, and convincing" is a recipe for violating the deference we owe to trial courts. To force us to "consider" contrary evidence invites (if not subconsciously compels) us to credit it more than the trial court may have done. Certainly we will weigh little or none of our cold record exactly like the trial court did. Why, then, should our weighing prevail when the trial court was "better positioned to determine witness credibility and weigh evidence in the context of the whole record than an appellate court"? **J.A.R.**, 426 S.W.3d at 626;

**C.M.B.R.**, 332 S.W.3d at 815. Why not trust the court that was "in a better position not only to judge the credibility of the witnesses and the persons directly, but also their sincerity and character and other trial intangibles which may not be completely revealed by the record"? **J.A.R.**, 426 S.W.3d at 627.

5. Apparently, until October 2016, Mother was unaware that her visits had been suspended. Visits were not reinstated because Mother never sought reinstatement or accepted the substance-abuse treatment that would have allowed visitation to resume.

- Mother had provided no financial or in-kind support while Child was in care, even when Mother was working full-time.

- Mother continued to use meth regularly, including just days prior to the TPR hearing.

- Mother rejected substance-abuse services offered to her, even though participation would have allowed her to resume visits with Child.

- Mother had not secured stable, appropriate housing. She went back to living with her abusive boyfriend after her jail release and testified that her contact with him was "never going to stop." As of the TPR hearing, she was spending nights on an acquaintance's couch.

- Mother acknowledged that she suffers from PTSD, severe anxiety, panic disorder, a mood disorder, and other mental conditions. She did not complete the court-ordered psychological evaluation and she was not under the care of a psychiatrist or counselor. She did not take her prescribed psychotropic medications regularly, and reported that she sometimes "self-medicated," apparently with meth.

- Mother did not comply with or make significant progress on her court-ordered treatment plan.

- Mother still lacked insight into why Child was under the court's jurisdiction. When asked that question at the TPR hearing, Mother replied, "Why don't you just tell me because I don't know."

In contrast, Child was faring much better. He was almost age four when he came into care, weighing only 19 pounds and wearing size 18-month-old clothes. He had been "extremely" neglected and was delayed in all areas of development. He was not toilet-trained; had an extreme startle response; would bite, kick, and hit anyone who tried to contain him; and suffered PTSD due to multiple layers of complex trauma while in Mother's care.[6] Yet, by the TPR trial, Child was thriving in his placement with his grandparents, who expressed a willingness to adopt him. Child's counselor expressed concern at the TPR hearing that Child would regress if he had contact with Mother, and would suffer extreme regression if placed with her.

After the TPR hearing, having found three § 211.447.5 termination grounds (abandonment, neglect, and failure to rectify) by clear, cogent, and convincing evidence and that termination was in Child's best interests, the trial court terminated Mother's parental rights.[7]

### Points 1–3—Statutory Termination Grounds

■ As earlier noted, these points charge that the respective statutory termination findings are not supported by substantial evidence. Mother's previously-discussed misunderstanding about our standard of review does not doom these points, but another error does. For each point, "Mother's argument wholly fails to follow the mandatory analytical sequence set forth by *Houston v. Crider*, 317 S.W.3d 178, 186-87 (Mo. App. S.D. 2010)."

---

6. Without belaboring this history, suffice it to say that diagnostic reports in evidence describe Child having "experienced an unspeakable level of abuse, neglect, and exposure to violence as he grew up" in Mother's "drug culture" and "[i]t is unclear how he survived the lack of food, sleep, and physical abuse as long as he did."

7. The father's parental rights also were terminated, but are not at issue in this appeal.

*Interest of C.Z.N.*, 520 S.W.3d 828, 834 (Mo.App. S.D. 2017).

■ "To present a not-supported-by-substantial-evidence challenge," as Mother does in all these points, "the appellant must complete three distinct analytical steps:

(1) identify a challenged factual proposition, the existence of which is necessary to sustain the judgment;

(2) identify all of the favorable evidence in the record supporting the existence of that proposition; and,

(3) demonstrate why that favorable evidence, when considered along with the reasonable inferences drawn from that evidence, does not have probative force upon the proposition such that the trier of fact could not reasonably decide the existence of the proposition."

*Id.* (citing *Houston*, 317 S.W.3d at 187). "Because Mother's arguments in Points [1-3] fail to follow this framework, her arguments are 'analytically useless and provide no support' for her challenge[s]." *Id.* at 835 (quoting *Houston*, 317 S.W.3d at 188).[8] *Ex gratia* review satisfies us that Mother's arguments, such as they are, lack merit.[9] Points 1-3 fail. *Id.*

---

8. Mother consistently fails at least the second and third analytical steps. For example, in Point 1, she identifies some proof favorable to the ruling but conspicuously ignores other evidence, even evidence that the court plainly noted in its abandonment findings:
   - Prior to her March 2016 probation violation and incarceration, Mother did not maintain contact with Child's case worker or engage in any services.
   - Following her August 2016 release from jail, Mother waited until October to contact Child's case worker.
   - Mother could have, but did not, petition the court to have visits reinstated.
   - Mother had not addressed her ongoing substance abuse, which was the reason visits were suspended.

## Point 4—Best Interests

■ Mother also challenges the trial court's best-interests finding, which we will reverse only for abuse of discretion, *i.e.*, if the ruling was so arbitrary, unreasonable, illogical, and ill-considered that it shocks the sense of justice. *See Interest of S.L.L.*, 518 S.W.3d 897, 898-99 (Mo.App. S.D. 2017). Child's best interests were "an ultimate conclusion for the trial court based upon the totality of the circumstances." *Id.* at 899.

Child's case worker and guardian ad litem both recommended termination as being in Child's best interests. There was testimony that Child was bonded with his grandparents, where Child was getting the support and stability he needed, and that they were willing to adopt him. The trial court found that a continuation of the parent-child relationship greatly diminished Child's prospects for early integration into a stable and permanent home.

The trial court also considered and made findings on the § 211.447.7 factors, none of which weighed in Mother's favor and several of which favored termination:

- Child had no healthy emotional ties to Mother.
- Mother had no contact with Child for more than a year.

- Mother had offered no financial or in-kind support since Child came into care, even when she was employed (she earned $3,377 in the ten weeks preceding the TPR hearing).

Other evidence, some of which we summarized above, also supports the abandonment finding.

---

9. Again using Point 1 as an example, *compare Interest of M.T.E.H.*, 468 S.W.3d 383, 394-95 (Mo.App. S.D. 2015) (finding of abandonment supported by parent's failures to provide even minimal support, visit with child when able, or complete services necessary to get visitation reinstated after it was suspended).

- Mother never provided financial or in-kind support while Child was in care, even when she was working and earning an income.

- Mother was disinterested in and lacked a commitment to Child as evidenced by her unwillingness to complete the steps to get visitation reinstated.

- Additional services were not likely to result in Child's return to Mother because she refused to follow through with referrals for services.

- Severe and ongoing trauma from domestic violence and a chaotic lifestyle while Child was in Mother's care qualified as deliberate acts of a parent or another, which Mother knew or should have known subjected Child to a substantial risk of mental harm.

These findings are supported by the record as we must view it and are not arbitrary, unreasonable, or illogical. *Id.* Mother's contrary arguments are unpersuasive, especially when her claim of "insufficient evidence" again ignores *Houston*'s mandatory rubric. The trial court did not abuse its discretion in finding that termination was in Child's best interests. We deny Point 4 and affirm the judgment.

NANCY STEFFEN RAHMEYER, C.J.—CONCURS

JEFFREY W. BATES, J.—CONCURS

GARY W. LYNCH, J.—CONCURS

DON E. BURRELL, J.—CONCURS

WILLIAM W. FRANCIS, JR., J.—CONCURS

MARY W. SHEFFIELD, J.—CONCURS