

# Missouri Court of Appeals

## Southern District

### Division Two

IN THE INTEREST OF N.D.B., )
MINOR, )
)
BUTLER COUNTY JUVENILE OFFICE, )
)
    Respondent, )
)
vs. )   No. SD36838
)
J.M.M., )
)   **Filed: May 5, 2021**
Appellant. )

### APPEAL FROM THE CIRCUIT COURT OF BUTLER COUNTY

#### Honorable Judge C. Wade Pierce

**<u>AFFIRMED</u>**

J.M.M. ("Mother") appeals a judgment terminating her parental rights to N.D.B. ("Child"), who was born in July 2018.[1] Mother argues the trial court's findings of neglect, failure to rectify, and parental unfitness are not supported by substantial evidence. *See* §§ 211.447.5(2), (3), and (5).[2] Mother does not claim error in the finding and conclusion that termination of her parental rights was in Child's best interest. We affirm.

---

[1] Child's father is unknown and is not a party to this appeal. Unknown father's parental rights have also been terminated.

[2] All statutory citations are to RSMo. as updated through 2019.

## Background

Child came into the custody of the Children's Division ("CD") following Mother's arrest on October 7, 2018.[3] At the time of her arrest, Mother was driving a vehicle reported as stolen, and three-month old Child was not properly restrained in the vehicle, which had been previously traveling at a high rate of speed.[4] Mother's blood alcohol content at the time of her arrest was .067% and she was driving while revoked. Child suffered extensive bruising and was diagnosed with head trauma and multiple hematomas. Mother was incarcerated.

After a juvenile adjudication hearing, Mother was found to have neglected Child, and Child was placed in the custody of CD with placement in the care of his maternal aunt ("Foster Mother").

Mother was already on probation on other criminal charges. Her probation for the crime of tampering with a judicial officer was revoked and she was ordered to serve a four-year sentence in the Department of Corrections. Mother was then incarcerated from October 2018 until March 2020 when she was released and moved into a transitional living facility. Mother was still facing three felony charges for tampering with a motor vehicle, property damage in the 1st degree, and stealing, with a jury trial scheduled for August 21, 2020.

A petition to terminate Mother's parental rights was filed in December 2019 and an amended petition was filed on April 16, 2020. Hearing on the amended petition was

---

[3] We view the evidence and inferences drawn from that evidence in the light most favorable to the judgment. *In Int. of T.T.G. v. K.S.G.*, 530 S.W.3d 489, 491 (Mo. banc 2017).

[4] According to the probable cause statement, Butler County Dispatch reported the vehicle had been travelling at 90-115 miles per hour, the vehicle showed signs of damage, and Child was not in a proper restraint. The vehicle's passenger stated they had driven into the woods and were lost for approximately three hours.

held on May 29, 2020 and June 26, 2020.  At the hearing, the trial court heard testimony from two CD caseworkers, Foster Mother, Mother, and a family specialist from the transitional living facility where Mother lived.  The trial court also received various exhibits, including judgments terminating Mother's parental rights to three other children.[5]

Casey Seabaugh ("Seabaugh") was Child's first caseworker with Butler County's CD office.  Seabaugh visited with Mother on October 9, 2018 at the Butler County Jail to explain to Mother that Child was in state custody and to inform Mother of her rights.  Mother was allowed visitation, but since she was incarcerated, she was not able to attend visitation.  Mother was given information about services she could complete while incarcerated which included substance abuse treatment and parenting classes.  CD sent Mother quarterly updates regarding Child and pictures of Child.  Seabaugh reported Mother sent letters to CD and to Foster Mother regarding Child.  Seabaugh testified the only child support Mother paid to CD was $2 per month.  Seabaugh stated Child did not have any emotional ties to Mother and did not have any relationship with her.  Regarding Mother's history with CD before Child came into care, Seabaugh testified a previous family-centered services case had been opened in July 2018 shortly after Child's birth following a hotline call, but it was closed after the caseworker was unable to contact Mother or locate her.

Patricia Gray ("Gray") was Child's second caseworker beginning on February 1, 2020.  Gray testified Mother was in a nine-month program at the transitional living

---

[5] Two of these terminations were by Mother's consent and one was involuntary.

facility, and Mother would not complete the program until December 2020. Gray testified Mother's ability to leave the transitional living facility was extremely restricted.

Gray testified Mother was currently employed with weekly wages of $455.04. Since Mother had become employed, she had not increased her payment of child support, but had bought Child a "couple of pairs of shoes[.]" Gray testified Mother had not made any arrangements as to where she would live after completing her aftercare program.

Mother told Gray she was going to trial on her pending charges and thought she would win at trial and the charges would be dismissed. According to Gray, Mother's current criminal charges were concerning because "we don't know where [Mother will] be after the criminal charges are disposed."

Gray described Child and Foster Mother as "very close, very bonded." She also said Child was in a "stranger-danger phase right now" and that it would have a "significant negative impact" on Child to be removed from Foster Mother.

Foster Mother testified she was interested in adopting Child. She stated Mother had only sent Child a gift card at Christmas and a pair of shoes. Foster Mother testified that on the evening of October 6, 2018, the day before Mother's arrest, Mother came to Foster Mother's house looking for Child's grandfather. Foster Mother, who had not seen Mother in ten years, stated Mother left around midnight, saying she was going to locate Child's grandfather in North Carolina, where he was working at the time. Foster Mother described Mother's behavior on that evening as "really erratic[.]" Foster Mother was not optimistic of a future relationship with Mother because of Mother's twenty-year cycle with drugs.

Mother testified regarding her current living situation and employment. She testified she was residing at a "nine-month aftercare program" facility utilized when a person is released from prison. Mother stated she was "not required to be there" and she could leave whenever she wanted, but she chose to be there. Mother planned to complete the program then leave "if [she was] ready[.]" Mother had become employed while at the facility and currently made $11.25 per hour. Mother stated she paid $2 per month in support, but acknowledged she "could send extra[.]" She also sent Child two gift cards during her incarceration. Regarding her pending criminal cases, Mother testified she had been offered a guilty plea for four years to run concurrent with her previous four-year sentence but she did not take that offer because she wanted to go to trial.

As for Mother's lifestyle in the period of time after Child was born and prior to her arrest, Mother described living with and working for two different families. Mother admitted she had been addicted to alcohol for most of her life and had previously used methamphetamine and marijuana. Mother acknowledged it would not be good for Child to be removed from his current home and relocated at the present time.

At the conclusion of the evidence, Child's Guardian Ad Litem recommended Mother's rights be terminated based on Mother's "chaotic" past and Child's need for stability.

After the hearing, the trial court entered findings of fact and conclusions of law on July 28, 2020 terminating Mother's parental rights to Child on three grounds: abuse or neglect, *see* § 211.447.5(2) ("abuse or neglect ground"); failure to rectify, *see* § 211.447.5(3) ("failure to rectify ground"); and parental unfitness, *see* § 211.447.5(5)(a) ("parental unfitness ground"). The trial court made the statutorily-required findings

5

related to the abuse or neglect ground and the failure to rectify ground.  *See* §§ 211.447.5(2)(a)-(d); 211.447.5(3)(a)-(d).  The trial court also found termination of Mother's parental rights was in Child's best interest and made the related statutorily-required findings.

Mother filed a motion to reconsider on August 27, 2020, which the trial court denied on September 16, 2020.  Mother timely appeals.

## Standard of Review

"In reviewing termination of parental rights cases, like all types of bench-tried cases, this Court is mindful 'that circuit courts are better positioned to determine witness credibility and weigh evidence in the context of the whole record than an appellate court.'"  ***Interest of R.R.S.***, 573 S.W.3d 717, 724 (Mo. App. S.D. 2019) (quoting ***In Int. of J.P.B.***, 509 S.W.3d 84, 89-90 (Mo. banc 2017)).

> This Court reviews whether clear, cogent, and convincing evidence was presented to support a statutory ground for terminating parental rights under *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976).  Therefore, the trial court's judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law.  The judgment will be reversed only if we are left with a firm belief that the order is wrong.
>
> Conflicting evidence will be reviewed in the light most favorable to the trial court's judgment.  Appellate courts will defer to the trial court's credibility assessments.  When the evidence poses two reasonable but different inferences, this Court is obligated to defer to the trial court's assessment of the evidence.
>  . . . .
>
> This Court has laid to rest any argument that the clear, cogent, and convincing burden of proof requires this Court to consider any contrary evidence when reviewing whether the judgment is supported by substantial evidence.
>
> In reviewing questions of fact, the reviewing court is to recognize that the circuit court is free to disbelieve any, all, or none of the evidence, and it is not the reviewing appellate court's role to re-evaluate the evidence through

6

its own perspective. The trial court receives deference on factual issues because it is in a better position not only to judge the credibility of the witnesses and the persons directly, but also their sincerity and character and other trial intangibles which may not be completely revealed by the record.

*J.P.B.*, 509 S.W.3d at 90 (internal citations and quotation marks omitted). According to our standard of review, the trial court's judgment is presumed valid, and it is the appellant's burden to demonstrate it is incorrect. *R.R.S.*, 573 S.W.3d at 730. "The circuit court's judgment will be affirmed if the record supports at least one ground and supports that termination is in the best interest of the [child]." *J.A.R. v. D.G.R.*, 426 S.W.3d 624, 630 (Mo. banc 2014).

**Analysis**

Mother raises three points on appeal, arguing the trial court erred in terminating her parental rights because each of the statutory grounds for termination was not supported by substantial evidence. Point 1 challenges the abuse or neglect ground for termination, point 2 challenges the failure to rectify ground for termination, and point 3 challenges the parental unfitness ground for termination. However, "[o]nly one statutory termination ground is needed to sustain the judgment." *In Int. of Z.L.G.*, 531 S.W.3d 653, 655-56 (Mo. App. S.D. 2017). Our resolution of point 3 is dispositive of Mother's appeal, so we need not address points 1 and 2. *See In Int. of A.F.W.*, 543 S.W.3d 66, 71 & n.6 (Mo. App. S.D. 2018).

In point 3, Mother argues the trial court's termination of her parental rights on the basis of parental unfitness was not supported by substantial evidence because:

> 1. The majority of the [t]rial [c]ourt's findings were not related to acts or conditions that existed at the time of termination, where [Mother] was no longer incarcerated, earning a substantial wage, had no lingering substance abuse issues and was living in a home suitable to [Child], and

2. There was no evidence to support a finding that conditions that existed at the time of trial could not be remedied in the reasonably foreseeable future, where the record did not contain any evidence regarding how long it would take to integrate [Child] back into [Mother's] home and insufficient evidence to support a finding that [Mother] may go back to prison.

 3. The [t]rail [sic] [c]ourt failed to explicitly tie past acts with a predicated future harm.

Section 211.447.5(5)(a) provides for termination of parental rights if "[t]he parent is unfit to be a party to the parent and child relationship" on the basis of:

a consistent pattern of committing a specific abuse including, but not limited to, specific conditions directly relating to the parent and child relationship which are determined by the court to be of a duration or nature that renders the parent unable for the reasonably foreseeable future to care appropriately for the ongoing physical, mental, or emotional needs of the child.

§ 211.447.5(5)(a).[6]

The language of this provision:

expresses a clear and unambiguous legislative intent to treat "specific conditions directly relating to the parent and child relationship which are determined by the court to be of a duration or nature that renders the parent unable for the reasonably foreseeable future to care appropriately for the ongoing physical, mental, or emotional needs of the child" as a non-exclusive example of "a consistent pattern of committing a specific abuse."

*In Int. of E.B.R. v. E.R.*, 503 S.W.3d 277, 282-83 (Mo. App. W.D. 2016) (quoting § 211.447.5(6)).  This provision requires the trial court to determine the parent is "currently unfit to be a party to the parent and child relationship, supported by findings as to acts or conditions that persist at the time of termination." *In re D.D.C.*, 351 S.W.3d 722, 732 (Mo. App. W.D. 2011) (quoting *In re W.C.*, 288 S.W.3d 787, 801 (Mo.

---

[6] Section 211.447.5(6) was renumbered as 211.447.5(5) following statutory changes effective August 28, 2018.  *See* S.B. 819, 99th Gen. Assem. (Mo. 2018).

App. E.D. 2009) (interpreting prior version of statute)). "Specific conditions," as used in the parental unfitness ground for termination "may include conditions that result from incarceration." ***J.P.B.***, 509 S.W.3d at 95 (internal quotation marks omitted). The abuse described in this statutory provision "is much broader than what has traditionally been thought of as 'abuse[.]'" ***Interest of K.L.M.***, 615 S.W.3d 128, 131 n.5 (Mo. App. S.D. 2021).

The trial court's findings on parental unfitness were as follows:

[Mother] is unfit to be a party to the parent and child relationship because of a consistent pattern of committing a specific abuse including, but not limited to, specific conditions directly relating to the parent and child relationship which are determined by the [c]ourt to be of a duration or nature that renders the parent unable for the reasonably foreseeable future to care appropriately for the ongoing physical, mental, or emotional needs of [Child]. The specific conditions relating to the parent and child relationship are that at the time [Child] came into care on October 7, 2018, [M]other had criminal charges pending, she was homeless and searching for assistance from her father, whom she hadn't seen in years, to care for [Child], and she exhibited a blatant disregard for the welfare of [Child] by operating a motor vehicle at high rate of speed while [Child] was unsecured therein, resulting in injuries to [Child]. Since that time, she has not seen [Child] and has not developed a relationship with [Child]. It is anticipated that even if [M]other is not convicted at trial in August, 2020, of at least one of the felonies pending against her, that she will remain at the transitional living facility in Cuba, Missouri, as a temporary residence through at least mid to late December, 2020. She admitted at trial that it would be contrary to the welfare of [Child] to remove him from his present home, where he has lived on a full-time basis, without giving him reasonable time to become acquainted and comfortable with her. It is undisputed that [Child's] relationship with his aunt, who serves as foster parent, is like a mother and child relationship. While the [c]ourt is hopeful that [M]other will be successful in resolving her pending issues, and in maintaining full-time employment and a home out of the control of the Missouri Department of Corrections, the [c]ourt finds that because of the duration of time [Child] has been in care, and [M]other's historical inability to properly care for a child, it would be inappropriate to return [Child] to [M]other as she will be unable to provide care for [Child] in the reasonably foreseeable future.

Substantial evidence supported the trial court's finding of a statutory ground for termination under section 211.447.5(5)(a) on grounds of parental unfitness. The "specific conditions" here included, but were not limited to, conditions that resulted from Mother's incarceration. Just as in ***J.P.B.***, Mother's "volitional criminal activity" of violating her probation, resulted in her arrest and her incarceration in October 2018, when Child was only three months old. 509 S.W.3d at 95. During her seventeen months of incarceration, Mother did not have any visitation with Child which resulted in Child's inability to bond with Mother during that time. Courts have previously upheld the termination of an incarcerated parent's parental rights on grounds of parental unfitness despite efforts of the parent to attempt to form a bond with a child when the parents were incarcerated from the time of their child's infancy. *See*, *e.g.*, ***In re Z.L.R.***, 347 S.W.3d 601, 608-09 (Mo. App. S.D. 2011); ***In re C.S.***, 351 S.W.3d 264, 268-69 (Mo. App. W.D. 2011).

In addition, although Mother was no longer incarcerated at the time of her termination hearing, she was facing pending criminal charges on three separate felonies, the disposition of which could result in additional terms of incarceration. In ***In re J.D.P.***, the court affirmed the termination of a father's parental rights on the statutory ground of parental unfitness based, in part, on the inability of the child to be returned to father within an ascertainable amount of time since father was currently incarcerated, was facing additional criminal charges, and he still had not completed numerous court-ordered services required for reunification. 406 S.W.3d 81, 84-85 (Mo. App. E.D. 2013). Similarly here, Mother's prior criminal history and pending felony charges lead to a reasonable inference that Child would not be able to return to Mother within the reasonably foreseeable future.

Furthermore, the trial court heard evidence of Mother's unstable lifestyle prior to her incarceration. She and Child lived with two different families in the first three months of Child's life, and then Mother was incarcerated. Once in the transitional living facility, Mother had no established plan for her housing and was awaiting trial for her felony charges.

In addition, the day before Mother was arrested, Mother admitted she had been looking for her father—who she had not seen in approximately 10 years—to see if Child could stay with him while she resolved her "legal situation." When asked when she would leave the transitional living facility, Mother stated she would leave in December "if" she "was ready." Mother failed to demonstrate her future stability. The trial court could reasonably infer that Mother's future housing and lifestyle would continue to lack stability.

"Every child is entitled to a permanent and stable home." ***Z.L.R.***, 347 S.W.3d at 608. The trial court had before it evidence of Mother's pending felony charges, her history of homelessness and instability, her admitted prior alcohol addiction, her lack of any plan for housing for herself and Child after she completed the transitional living program, and her lack of any bond with Child. The trial court did not err in finding specific conditions directly relating to the parent and child relationship were of a duration or nature that rendered Mother unable for the reasonably foreseeable future to care appropriately for Child's ongoing needs. Accordingly, the trial court did not err in finding ground for termination under section 211.447.5(5)(a).[7] Point 3 is denied.

---

[7] Moreover, as this Court has recently clarified, "***K.A.W.***'s future harm analysis requirement . . . applies to and must be reviewed within the context of the evidentiary support for a trial court's determination as to the existence of a termination ground or the best interest of the child." ***A.R.F. v. V.H.F.***, 593 S.W.3d 686, 689 (Mo. App. S.D. 2020) (referring to ***In re K.A.W.***, 133 S.W.3d 1 (Mo. banc 2004)). There is no legal requirement for the trial court "to make an explicit future harm analysis separate and apart from its

## Conclusion

The trial court's judgment is affirmed.

MARY W. SHEFFIELD, J. – OPINION AUTHOR

JEFFREY W. BATES, C.J. – CONCURS

GARY W. LYNCH, J. – CONCURS

---

grounds and best interest determinations[.]" ***A.R.F.***, 593 S.W.3d at 689.  As long as the "relevant termination ground[] [was] supported by substantial evidence supporting the potential for future harm[,]"  as occurred in this case, ***K.A.W.***'s requirements have been met.  *See **id.***