

# Missouri Court of Appeals
## Southern District

### In Division

IN THE INTEREST OF: )
S.M.L.E. and W.W.L.E., minor children )
under seventeen years of age )
)
GREENE COUNTY JUVENILE OFFICE, )
)
      Plaintiff-Respondent, )
)
v. )    Consolidated Nos. SD37900 and
)    SD37901
S.W.E., Natural Father, )
)    **Filed: June 27, 2023**
      Respondent-Appellant. )

### APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable Richard Kevin Zerr

**<u>AFFIRMED</u>**

S.W.E. ("Father") appeals the circuit court's judgment terminating his parental rights in, to, and over S.M.L.E. and W.W.L.E. (collectively, "the Children"). In one point on appeal, Father claims the circuit court abused its discretion in finding that it was in the Children's best interest to terminate his parental rights without also terminating the parental rights of the Children's natural mother ("Mother") because "no evidence was adduced at trial that termination of Father's rights alone was in the [C]hildren's best interests." Finding no merit in that claim, we affirm.

1

**Applicable Standard of Review and Governing Law**

> In termination of parental rights cases, we will sustain the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *S.S.S. v. C.V.S.*, 529 S.W.3d 811, 815 (Mo. banc 2017) (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). The evidence is viewed in the light most favorable to the trial court's judgment and will be reversed only if we are firmly convinced the judgment is erroneous. *In re S.Y.B.G.*, 443 S.W.3d 56, 59 (Mo. App. E.D. 2014). . . . The standard of proof for the "best interest" inquiry is a preponderance of the evidence; on appeal, the standard of review is abuse of discretion. *J.A.R.* [*v. D.G.R.*], 426 S.W.3d [624,] 626 [(Mo. banc 2014)].

*In re K.A.M.L.*, 644 S.W.3d 14, 20 (Mo. App. E.D. 2022) (internal quotation and citations omitted). An abuse of discretion occurs "only when the trial court's ruling is 'so arbitrary, unreasonable, illogical and ill-considered that it shocks the sense of justice' and indicates a lack of careful consideration." *In re P.W.W.*, 601 S.W.3d 592, 593 (Mo. App. S.D. 2020) (quoting *In re Z.L.G.*, 531 S.W.3d 653, 660 (Mo. App. S.D. 2017)).

"Termination of parental rights under Chapter 211 is a two-step process." *In re C.M.H.*, 408 S.W.3d 805, 809 (Mo. App. S.D. 2013). "First, the [circuit] court must find that one statutory ground for termination of parental rights exists." *Id.* If the first step is satisfied, the circuit court must then consider whether termination of parental rights is in the child's best interest. *Id.* "The trial court must find, by a preponderance of the evidence, that termination of a parent's rights is in the best interests of the child based on a subjective assessment of the totality of the circumstances." *Id.*

**Background**

Father is the natural father of the Children. S.M.L.E. was brought into care on May 14, 2021, along with five other siblings, none of whom are related to Father. W.W.L.E. was taken into care shortly after his birth on October 21, 2021. The Children

were living in a one-bedroom home without air conditioning, ventilation, or plumbing. They were sleeping on crib-like, moldy mattresses without sheets, blankets, or pillows, and the home was littered with animal feces and trash. Reports indicated that incidents of domestic violence between Father and Mother had occurred, and Father was facing first-degree robbery charges at the time of trial.

The Children remained in the custody of the Children's Division ("CD") through the trial that took place on November 10, 2022. The separate petitions to terminate Father's and Mother's parental rights were consolidated for trial with petitions to terminate Mother's rights over Mother's other five children.

At trial, the parties announced that Mother desired to consent to the termination of her parental rights on the condition that the then-foster parent would adopt all seven of her children, and Mother would be allowed to contact the children under certain conditions to be set forth in a post-adoption contract. When Mother entered her conditional consent to the termination of her parental rights as to each child, including the Children, the circuit court ordered Mother dismissed from the proceedings. The circuit court's judgment stated the following:

> The Juvenile Officer having dismissed this action, as to [Mother] only, based upon her filing a voluntary consent to termination of her rights, with the expectation that her consent will be submitted for acceptance and approval at the time of a proposed adoption, the cause is **Dismissed**, as to [Mother] only.

The circuit court subsequently terminated Father's rights on the grounds of neglect (*see* section 211.447.5(2)) and failure to rectify (*see* section 211.447.5(3)) and concluded that termination of Father's parental rights was in the Children's best interest.[1]

---

[1] Unless otherwise indicated, statutory citations are to the 2016 edition of RSMo, updated through the 2021 cumulative supplement.

Father does not challenge the circuit court's findings that Father had neglected the Children and had failed to rectify the conditions that resulted in their removal from the biological parents' care.

## Analysis

Father's sole point claims

> [t]he trial court erred in finding that it was in the [C]hildren's best interest to terminate the parental rights of Father and dismiss the termination of parental rights action against Mother because said findings are not supported by substantial evidence in that no evidence was adduced at trial that termination of Father's rights alone was in the [C]hildren's best interests.

We disagree.

> Section 211.447.7 requires the circuit court, "[w]hen considering whether to terminate the parent-child relationship pursuant to . . . subdivision . . . (2) [or] (3) of subsection 5 of this section," to evaluate and make findings on the following factors, when appropriate and applicable to the case:
>
> > (1) The emotional ties to the birth parent;
> >
> > (2) The extent to which the parent has maintained regular visitation or other contact with the child;
> >
> > (3) The extent of payment by the parent for the cost of care and maintenance of the child when financially able to do so including the time that the child is in the custody of the division or other child-placing agency;
> >
> > (4) Whether additional services would be likely to bring about lasting parental adjustment enabling a return of the child to the parent within an ascertainable period of time;
> >
> > (5) The parent's disinterest in or lack of commitment to the child;
> >
> > (6) The conviction of the parent of a felony offense that the court finds is of such a nature that the child will be deprived of a stable home for a period of years; provided, however, that incarceration in and of itself shall not be grounds for termination of parental rights;

4

(7) Deliberate acts of the parent or acts of another of which the parent knew or should have known that subjects the child to a substantial risk of physical or mental harm.

"There is no requirement, statutory or otherwise, that all seven of these factors must be negated before termination can take place; likewise, there is no minimum number of negative factors necessary for termination." [*In re*] *C.A.M.,* 282 S.W.3d [398,] 409 [(Mo. App. S.D. 2009)]. Indeed, these factors "are merely an aid to the 'best interests' determination." *In re G.G.B.,* 394 S.W.3d 457, 472 (Mo.App.E.D.2013).

*C.M.H.*, 408 S.W.3d at 815.

Father "concedes that there is evidence in the record that would support the trial court's findings with respect to the best interest factors set forth in [section] 211.447.7(1)-(7)." Father argues, however, that he is "challenging the proposition that it is in the best interests of the [C]hildren for his rights to be terminated while not terminating the rights of [Mother]." Father also concedes that Missouri law explicitly allows for terminating one parent's rights while leaving the other's intact. *See* section 211.477.2 (stating that "[i]f only one parent consents or if the conditions specified in section 211.447 are found to exist as to only one parent, the rights of only that parent with reference to the child may be terminated and the rights of the other parent shall not be affected").

Having correctly conceded that Missouri law allows the circuit court to do the exact thing that it did in this case, Father is left only with policy arguments that are not supported by any citations to legal authority. The two cases that Father cites in his brief are inapposite.

Father first cites to *C.M.H.* to support his argument that terminating only his rights while leaving Mother's rights intact was not in the Children's best interest. *C.M.H.* noted at the outset that under "the rare circumstances present in th[at] case,"

5

termination of Mother's parental rights was not in the children's best interest. 408 S.W.3d at 808. To summarize, *C.M.H.* found those rare circumstances to be as follows:

> (1) the parental rights of the children's fathers were not terminated; (2) the children were bonded to Mother; (3) Mother had provided some monetary and in-kind support to the children in the past; and (4) the absence of any evidence that the continuation of the legal familial relationship between Mother and the children would be in some way detrimental to the children—the trial court's finding that the drastic remedy of terminating Mother's parental rights was in the best interests of the children was not supported by substantial evidence and was "clearly against the logic of the circumstances then before the court[.]" [*In re*] *A.S.,* 38 S.W.3d [478,] 486 [(Mo. App. S.D. 2001)].

*Id.* at 819.

The circumstances here are significantly different from those present in *C.M.H.* In the instant case, the circuit court found that the Children were not bonded to Father, Father had not visited with or otherwise contacted the Children in over six months, had not contacted the caseworker about the Children's well-being, had not provided the Children with financial or in-kind support, and had failed to take advantage of additional services that might have enabled the Children to be returned to him within an ascertainable period of time. At the time of trial, it was also uncertain as to when Father would be released from the Department of Corrections.

The second case cited by Father, *In re R.A.S.*, is also distinguishable. In that case, the father *wanted* the circuit court to terminate his parental rights to his son – an effort that the circuit court found was "a transparent attempt to avoid [paying child] support." 826 S.W.2d 397, 399 (Mo. App. W.D. 1992). *R.A.S.* noted that severing the parent's ties to the child also severed the child's ties to the parent, and it emphasized the importance of the public policy that a minor child not be cut off from his right to receive

monetary support from his natural parents. *Id.* at 399-401. In this case, Father had not shown himself capable of being a reliable source of child support.

*C.M.H.* noted that severing a child's ties to one parent while leaving the ties to the other parent intact is just one consideration in determining what is in the best interest of a child. 408 S.W.3d at 818-19. Here, in reviewing the totality of the circumstances, we cannot say that the circuit court abused its discretion in finding that termination of Father's rights was in the Children's best interest, despite the fact that Mother's rights had not yet been terminated.

Father's point is denied, and the judgment of the circuit court is affirmed.

DON E. BURRELL, J. – OPINION AUTHOR

JACK A. L. GOODMAN, J. – CONCURS

JENNIFER R. GROWCOCK, J. – CONCURS

7